TOWN OF QUEENSBURY *v.* CULVER.

1. There being nothing in the constitution of the State of New York which makes unconstitutional an act of the legislature authorizing the people of a town to decide whether they will donate its bonds to a railroad company, and collect taxes for the amount, such an act (the same being enabling merely and not mandatory) is binding.

---

* Turner *v.* Enrille, 4 Dallas, 7.      † Ib. 8.

‡ 4 Cranch, 46.      § 9 Wheaton, 537.

‖ 16 Peters, 315.

¶ Kearney *v.* Case, 12 Wallace, 275.

2. Where a town, issuing bonds to which coupons or interest warrants are attached, acknowledges, in the body of the bond, that the town is indebted to the bearer or his assigns in such a sum of money, payable at a future day named, " with interest thereon at the rate of 7 per cent., on presentation and delivery of the coupons for the same thereto attached," it may be sued on the coupons alone, though they may have been issued by commissioners specially made agents of the town by the legislature, and by it charged with the matter of issuing the securities, and not made by the ordinary town authorities.

3. This liability of the town is not taken away by the fact that the legislature has directed a special mode in which the money to pay the principal and interest of the bonds is to be raised; the directions being given to the town and county agents, and not to the holders of the bonds or coupons.

4. An act empowered commissioners to dispose of certain town bonds (whose issue for the benefit of a railroad company named, the act authorized), "to such persons or corporation and upon such terms as the commissioners should deem most advantageous for the town, but not for less than par;" and to " donate the *money* which should be so raised to the railroad company." The act, however, required that they should not " pay over any money *or bonds* " except upon certain conditions specified. The commissioners did not sell the bonds, but handed them over to the railroad company in discharge of the authorized donation. On suit against the town by a *bonâ fide* holder of the bonds, *held*, that there was no violation of the act by the commissioners in what they had done.

ERROR to the Circuit Court for the Northern District of New York; the case being this:

In May, 1857, the State of New York passed " An act to authorize the town of Queensbury, in the county of Warren, to issue bonds to aid in the construction of a railroad from the village of Glenn's Falls to intersect the Saratoga and Whitehall Railroad." The act enacted:

" SECTION 1. On the application, in writing, of twelve or more freeholders, residents of the town of Queensbury, it shall be the duty of the county judge of said county to appoint five freeholders, residents of said town, to be commissioners of such town to carry into effect the purposes of this act. A majority of the said five shall constitute a quorum for the doing of any act contemplated in this act.

" SECTION 2. It shall be lawful for the said commissioners to borrow, on the faith of the credit of the town, $100,000, &c., . . . at a rate of interest not exceeding 7 per cent., and to execute

bonds therefor.  The bonds may be in such form as the commissioners shall deem expedient.

"SECTION 3.  The said commissioners may dispose of such bonds to such persons or corporation and upon such terms as they shall deem most advantageous for the town, but not for less than par; and the money which shall be so raised *shall be donated* to such railroad corporation or association as has now or shall hereafter file articles of association to build and operate a railroad from the village of Glen's Falls to the Saratoga and Whitehall railroad, its buildings and necessary appurtenances, and for no other purpose whatsoever.  For the completion of said road and the expenditure of the sum so donated by said town, said corporation shall give full and adequate security to said commissioners, and for the more effectual enforcement of this act, the commissioners shall not pay over any *money or bonds* to the said railroad corporation until they have been furnished with satisfactory assurances that the sum of $100,000 shall have been subscribed and paid in, and actually expended in the construction and building of the said road.  And this act shall not be construed so as to make the said town a party to this corporation, and the said town shall not be taxed hereafter for any appropriation required for said road beside the amount donated in the second and third sections of this act, but such additional amount shall be raised by said corporation.

"SECTION 4.  The commissioners shall report annually to the board of supervisors of the county of Warren, the amount required to pay the principal and the interest on the bonds authorized to be issued under and by virtue of this act; and it is hereby made the duty of the board of supervisors, and they are hereby authorized and required to cause to be assessed, levied, and collected of the real and personal property of said town of Queensbury, such sum of money as shall have been reported to the said board of supervisors by the said commissioners to be necessary; and the same when collected, shall be paid to such commissioners, and by them be applied to the payment of the bonds, with the interest.

"SECTION 5.  No money shall be borrowed, or bonds issued, until the question whether or not it is expedient to borrow such money and issue such bonds, for the purpose named in this act, shall have been submitted to the *taxable electors* of the town of Queensbury, and affirmatively determined by them.

"Section 8. The said company so to be formed may charge the sum of not exceeding six cents per mile for passengers riding over said road."

Commissioners (including among them H. R. Wing, D. Peck, and W. A. Wait) were appointed under the act, and an election was held at which the majority of those voting were in favor of the project. The commissioners prepared and executed bonds to the amount authorized, with interest warrants attached.

The bonds acknowledged "that the town of Queensbury was indebted to the bearer in the sum mentioned for value received in money borrowed, payable on the 6th day of February, 1868, with interest thereon, at the rate of 7 per cent., *on presentation and delivery of the coupons for the same thereto attached.*"

The warrants were in this form:

---

### TOWN OF QUEENSBURY.

**$70.**        *Interest Warrant.*        **$70.**

*GLENN'S FALLS NATIONAL BANK:*

     *Pay to Bearer*     Seventy Dollars,     *interest on*
*Bond No.* 92, *due February* 1, 1870.

D. B. Ketchum,         H. R. WING,
        Town Clerk.      D. PECK,     } Commissioners.
        W. A. WAIT,

---

No money was raised by the commissioners upon the bonds or interest warrants, but both were delivered by the commissioners to the railroad corporation.

One Culver was a contractor with the corporation for the construction of its road. He received certain bonds and interest warrants from the railroad corporation on its contract, and the warrants not being paid he sued the town of Queensbury in assumpsit upon them. Plea, non-assumpsit. The warrants sued on were detached from the bonds.

The counsel for the defendant requested the court to give various instructions, as:

1st. That the act was in violation of the constitutions of New York and of the United States.

2d. That if valid, assumpsit would not lie against the town on the interest warrants sued on; they not purporting to be made or issued by or in behalf of the town; and the town not being liable in assumpsit on them.

3d. That the only remedy to enforce the payment by the town was to compel an assessment, collection, and payment, such as was contemplated by the fourth section of the act.

4th. That in delivering the bonds and warrants to the railroad company as they had done, the commissioners had not disposed of them or raised money on them at not less than par as the statute required them to do; and that they had thus violated the statute.

The court refused all of these requests for instructions, or to nonsuit the plaintiff, and verdict and judgment having gone accordingly for him, the town of Queensbury brought the case here.

*Mr. Francis Tiernan, for the plaintiff in error:*

1. *The act by which the donation was authorized was void.* The farthest that the courts of New York have gone is to hold that the legislature has power to authorize municipal corporations to become owners of stock in a railroad company, and to incur debt and impose taxes to pay for the same;* but it has never been decided that the legislature has power to order money to be taken by taxation from the people of a town and "*donated*," that is to say, *given away as a present* to a railroad company; and still less that the legislature, in which alone by the constitution of New York the *legislative power* of the State is vested, can appoint a sub-legislative body to do it for them.

In 1868, *before* the making of the instruments in question,

---

* Bank of Rome *v.* The Village of Rome, 18 New York, 38.

an act of the legislature of New York, precisely like the act under consideration, was held to be void by the Supreme Court of that State.* This adjudication has never been reversed or questioned.

It will hardly be pretended that this depriving the parties of their property was "by the law of the land" or "by due process of law." To hold that it was would be to render those well-known provisions of the Constitution, which say that no one shall be otherwise deprived of his property, nugatory as against the arbitrary will of the legislature; and be contrary to the settled meaning of those terms.†

Conceding that this taking of property was for *public use*, it was for a public use without compensation made. The very purpose of the act was to enforce a gift. It requires a *donation*.

But the money was not for *public use* within the legal signification of the terms. It was not to be paid into the treasury of the State, or to any State officer. It was not to be applied to the construction of any work owned by the State or any political division thereof, or in which either has any legal interest. The money is to be taken from the owners of property in a particular town, and *given away* to a *private* corporation.

For that the road to be constructed by the corporation is private property is obvious. Indeed the corporation has a vested right, by virtue of the act in question, if it be valid, to expel any person from the road who will not pay six cents per mile for riding in its cars thereon. The fact that the business of this corporation is to be that of a *common carrier* of persons and property for hire, and that as such the corporation is liable at common law to certain duties and responsibilities, and doubtless may be subjected by statute to others, does not make the road cease to be *private* property,

---

* In the matter of Sweet *v.* Hulbert, 51 Barbour, 312.

† Wynehamer *v.* The People, 13 New York, 392–396; Norman *v.* Heist, 5 Watts & Sergeant, 173, per Gibson, C. J.

and its business *private,* and to be carried on for the private gain of its stockholders.*

The occupation of an innkeeper is in the nature of a public employment. Inns are necessary for the accommodation of the public. The innkeeper is bound to receive all travellers who apply peaceably to be received as guests, so long as he has room; and he is an insurer of the property of the guest. But the legislature has not power to order money to be levied upon the inhabitants of a locality and *given away* to a company, even to aid it in the erection and maintenance of an inn.

So it may be for the public good that a factory be built and worked. Such enterprises as making railroads, opening good inns, building factories, &c.,—although done by individuals or corporations—may enhance the value of property and may tend to general prosperity. But this does not authorize the legislature, under the guise of an exercise of the taxing power, to compel citizens who are not regarded as public spirited to "*donate*" a portion of their property to individuals or corporations who propose to construct such works. There is a wide difference between exacting money from the citizen for *the use* of the State or a political division of it, and commanding him by legislative enactment to present to another individual or to a private corporation money to aid in constructing a work to be owned and worked by them for their private gain. This may be for the *public good,* but it *is not* taking the money for public *use.*

2. Conceding the statute to be valid, the plaintiff was not entitled to recover in assumpsit. The interest warrants do not purport to be and were not made by or in the name of the town. There was no evidence of any *promise* by the town to pay the amount sought to be recovered; and none from which a promise by the town could be implied.

3. The town is not liable in its corporate capacity to an action at law for the non-payment of the instruments made

---

* Presbyterian Society *v.* Auburn, &c., Railroad Co., 3 Hill, 567, 569, 570; Williams *v.* New York Central Railroad, 16 New York, 97, 104, &c.

and issued by the commissioners. The statute which authorized the money to be borrowed on the credit of the town and the instruments in question to be issued, prescribes how they shall be paid; and the holder must pursue the remedy prescribed.*

4. The bonds and coupons were disposed of by the commissioners in violation of the act of the legislature, and, therefore, the. plaintiff cannot recover. By the third section, the commissioners were required to dispose of the bonds for money at *not less than par*, and pay over the money to the company to aid in constructing the road. The commissioners raised no money on the bonds, but delivered them to the railroad company, and the latter gave them to the plaintiff and others who were contractors to build the road. The plaintiff occupied no better position than the railroad corporation.

*Mr. C. Hughes, with whom was Mr. J. P. Stockton, contra.*

Mr. Justice STRONG delivered the opinion of the court.

In view of the numerous decisions made by the highest courts of most of the States, including New York, as also of those made by this court, it ought to be considered as settled that a State legislature may authorize a municipal corporation to aid in the construction of a railroad, in the absence of any express constitutional prohibition of such legislative action. There is no such prohibition to be found in the constitution of New York, and the courts of that State have many times held that the legislature has power to authorize cities and towns to subscribe for stock of a railroad corporation, to incur indebtedness for the subscription, and to impose taxes for the payment of the debt incurred. It is true no case in the highest court of that State has determined the precise question now presented, namely, whether a municipal corporation may be empowered to donate its

---

* Edwards *v.* Davis, 16 Johnson, 285; Almy *v.* Harris, 5 Id. 175; Brady *v.* The Supervisors of New York, 2 Sandford, Superior Court, 460; S. C., 10 New York, 260; Martin *v.* Board of Supervisors, 29 Id. 645.

bonds to a railroad company and collect taxes for the payment of the bonds. But subscriptions for stock, equally with donations, are outside of the ordinary purposes of such corporations, and the design of both is the same. It is to aid in the construction or maintenance of a public highway. It is for the promotion of a public use. The inducement to a subscription may be greater than the inducement to a donation. In the one case there may be a hope of reimbursement by the stock obtained; in the other there can be no such expectation. In both, however, the warrant for the exercise of the power is the same. It may be that a mandatory statute requiring a municipal corporation to subscribe for stock in a railroad company, or to contribute to the construction of the railroad of such a company is not a legitimate exercise of legislative power, and that it is not even an act of legislation. This was decided by the Court of Appeals of New York in the case of *The People ex rel.* v. *Bacheler.** But the present is no such case. The legislative act by which the town of Queensbury was authorized to issue bonds in aid of the railroad from the village of Glenn's Falls to intersect with the Saratoga and Whitehall Railroad was not mandatory. It was merely enabling. It authorized the issue and donation of the bonds, if approved by a popular vote. It was a mere grant of power upon conditions, coupled with a prescription of the mode in which the power granted might be exercised. And that it was a constitutional exertion of legislative power must be considered as settled affirmatively by the decisions of this court in *Railroad Company* v. *The County of Otoe,*† and *Olcott* v. *The Supervisors of Fond du Lac County.*‡ It cannot, therefore, be maintained, as contended by the plaintiff in error, that the statute under which the coupons in suit were issued was transgressive of the power vested in the legislature. If the Court of Appeals of New York had decided otherwise we should feel constrained to follow its decision, but no such determination has been made.

---

* 8 Albany Law Journal, 120.     † 16 Wallace, 667.     ‡ Ib. 678.

It is next insisted that, even if the statute under which the bonds were issued be valid, an action of assumpsit cannot be brought to recover the sums due on the coupons. The reasons given in support of this proposition are that the coupons do not purport to be, and that they were not, made in the name of the town; and that the town is not liable to an action at law for the failure to pay the instruments made and issued by the commissioners designated by the statute. Neither of these reasons is well founded. The bonds to which the coupons were attached do purport to bind the town. They acknowledge that the town of Queensbury is indebted to the bearer or his assigns in the sum mentioned, for value received in money borrowed, payable on the 6th day of February, 1878, "with interest thereon at the rate of seven per cent., on presentation and delivery of the coupons for the same, thereto attached." They are signed by the commissioners who were by the statute made agents of the town for issuing them, and they are countersigned by the clerk of the town of Queensbury. The coupons attached are all headed "Town of Queensbury Interest Warrant." They are in the form of orders drawn upon a bank, but signed by the commissioners as commissioners and attested by the town clerk. Very plainly, therefore, both the bonds and the interest warrants are evidence of indebtedness by the town. They appear to have been issued in strict compliance with all the requisitions of the statute. It is vain to say the statute imposed no duty upon the town or its officers. No one can doubt that it is competent for the legislature to determine by what agents a municipal corporation shall exert its powers. The statute in question did designate the agents, and their acts, within the authority conferred, are binding upon their principal, upon the town of which they had been constituted the agents.

Equally untenable is the position that an action at law is not maintainable, because the holders of the bonds and coupons are entitled only to that remedy for a default of payment which is provided by the statute. There are cases, it is true, which hold that where a statute creates a right

and enjoins a duty, nothing may be done agreeably to the provisions of the common law to enforce the duty or assert the right further than is necessary to give effect to the statute. But we do not perceive that this principle has any bearing upon the present case. The fourth section of the act requires the commissioners designated as the agents of the town to report, annually, to the board of supervisors of the county, the amount required to pay the principal and interest on the bonds authorized to be issued, and makes it the duty of the supervisors to assess, levy, and collect of the real and personal property of the town of Queensbury, such sum or sums of money as shall have been reported to them by the commissioners. The money thus collected the supervisors are required to pay to the commissioners, to be applied by them to the payment of the bonds and interest. These are all directions given to the town and county officers and agents—not to the holders of the bonds and coupons. They prescribe duties to be performed after the amount of the debt due by the town has been ascertained, either by agreement or by judgment. That amount may be contested. It has been in this case. It could only be determined by an action at law. Only after such a determination could the commissioners report how much was required to be levied by taxation. The action, then, does not take the place of any remedy provided by the legislature. At most, it is a step to give effect to the statutory provision.

The only other error assigned which requires notice is, that the court refused to direct a verdict for the defendants because the bonds were not disposed of by the commissioners at not less than par, because no money was received for them by the commissioners, and because they were delivered directly to the railroad company. But a delivery to the railroad company was plainly authorized by the act of the legislature. True, the commissioners were not at liberty to dispose of them for less than their par value, and they did not. Had they done so, and had the plaintiff not been a holder—without notice and for a valuable consideration—there might have been a defence to the action. The third section, how-

ever, empowered the commissioners to "dispose of the bonds to such persons or corporation as they should deem most advantageous for the town, but not for less than par." And it required them not to pay over "any money or bonds" to the railroad corporation until certain satisfactory assurances should be furnished them. Thus it appears that delivery of the bonds to the railroad company was contemplated and authorized.

There is, therefore, no error in the record, and the judgment is

AFFIRMED.