## SINTON *v.* CARTER Co.[1]

(*Circuit Court, D. Kentucky.* January 24, 1885.)

1. CONSTITUTIONAL LAW—LEGISLATIVE POWERS—MUNICIPAL CORPORATIONS.

In the absence of any constitutional prohibition the corporate existence and powers of municipalities are subject to the legislative control of the states creating them.

2. SAME—BY WHAT AGENCY MUNICIPALITY MAY ACT.

Where there is no constitutional inhibition, the legislature of a state may properly authorize a county to create a debt for a governmental purpose without a submission to a vote of the people, and may, in its discretion, select the agency by which the county is to act.

3. SAME—CASE STATED.

Where Carter county had lawfully issued its bonds in aid of a railroad, and portions of its territory had been taken to form other counties, by acts which provided that the citizens and property within the old limits should remain liable to taxation for the payment of those bonds, " as though this act had never been passed;" *held*, that an act which authorized the Carter county court to compromise those bonds, to issue new obligations in settlement, and to levy and collect taxes upon all the territory originally bound, was constitutional.

4. OBLIGATIONS.

The word "obligations," used without limitation, includes coupon bonds payable to bearer.

At Law. On demurrer.

*John W. Stevenson, Wm. Gobel,* and *E. B. Wilhoit,* for plaintiff.

*A. Duvall,* for defendant.

BARR, J. The defendant demurs to the petition because, as is argued, (1) the act under which the bonds sued on were issued is unconstitutional and void; (2) the act, if constitutional, does not authorize the issuing of these bonds; (3) there is a defect of parties defendant. It is insisted that the title of the act under which these bonds were issued does not express its subject, but is misleading and delusive. The title of the act of 1878 (1 Sess. Acts 1878, p. 77) is: "An act authorizing the county of Carter, and those parts of Boyd and Elliott taken from Carter county, to compromise and settle with the holders of the bonds and coupons of interest executed by Carter county in its subscription to the capital stock of the Lexington & Big Sandy Railroad Company, and to levy and collect a tax for that purpose." An examination of the act will show that the subject-matter is distinctly expressed by this title. But it is claimed that the legislature had no constitutional authority to authorize the county court of Carter to compromise an old debt and issue bonds for parts of Boyd and Elliott counties, and to levy and collect taxes upon parts of those counties to pay their proportion of those bonds thus issued. If this be true, as contended, the act would not be unconstitutional by reason of its title. The constitutional provision is that "no law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title." Here there is only one subject, and that is clearly expressed in the title. We have seen no case

---

[1]Affirmed. See 7 Sup. Ct. Rep. 650.

which sustains the contention of the learned counsel, and we think none can be found. Cooley, Const. Lim. 144–148, and authorities referred to in notes.

The next inquiry is whether the legislature had the constitutional right to empower the county court of Carter to act and bind those parts of Boyd and Elliott counties which had been a part of Carter county. Carter county, under the authority of the legislature, and prior to the formation of Boyd and Elliott counties, subscribed $75,000 to the stock of the Lexington & Big Sandy Railroad Company, and paid for it by the issuance of its coupon bonds payable to bearer. In 1859, and with these bonds outstanding, the county of Boyd was created. Sess. Acts 1859–60, p. 34. In this act the legislature provided "that nothing in this act shall be construed to release the citizens and property, now subject or which may hereafter become subject to taxation, within the boundary of Carter county, included in the first section of this act, from being held and made liable for the bonds and interest issued to the Lexington & Big Sandy Company, as though this act had never been passed." The county of Elliott was created by an act of the legislature passed in 1869, and exactly the same language is used in regard to this subject as that used in the act of 1859 creating Boyd county. Sess. Acts 1869–70, p. 72, § 7. In addition to this, express authority was given the officers of Carter county to continue to levy and collect taxes in that part of Elliott which was taken off of Carter county. This part of the act was, however, subsequently repealed. The effect of these provisions in the acts creating the counties of Boyd and Elliott was, I think, to retain those parts of Carter county within that municipality, as far as the then outstanding bonds were concerned. No other construction of these provisions would give full effect to the words, "as though this act had never been passed."

If the acts creating Boyd and Elliott counties had never been passed, there could not have been a doubt of the right of the legislature to authorize the county court of Carter to compromise and adjust the outstanding debt, and issue new bonds binding the county for the amounts agreed upon in the compromise. This would not have been because the people of the county had elected the county court as their final agent, but because the legislative department of the state authorized a subsisting municipality to compromise and adjust its outstanding bonds, and authorized the county court, as the agent of this municipality, to act for the corporation. It might, in the legislative discretion, have indicated any other agent. If I am correct in the conclusion that for the purpose of this outstanding debt of Carter county the territorial limits were the same as before the establishment of Boyd and Elliott counties, then the agency which should act for the county was within legislative discretion.

The question is not whether the legislature has the constitutional authority to empower a county court of one county to subscribe stock

in a railroad company, and issue bonds in payment thereof, for another county, without the consent of the people of that county, but whether, when the debt has already been created by the county itself under the authority of law, the legislature may not, in its discretion, indicate the agency to represent the debtor municipality in compromising and adjusting the debt, and issuing new bonds in settlement, without the consent of the people of that municipality. It is true that the act of 1878 authorized the novation of the old debt, and the creation of a new one for the amount of the compromise, and that the petition alleges the bonds sued on were delivered and accepted as the result of that compromise; but this fact did not make the act unconstitutional, for the reason indicated.

*Allison* v. *Louisville, H. C. & W. Ry. Co.* 10 Bush, 1, rather sustains than conflicts with the conclusion indicated. In that case the court sustained a subscription to the railroad company, and the issuing of bonds of one precinct of a county by the county court of the county. This precinct was only a small portion of the county, and the county court was in no proper sense the representative of the precinct. It was, in reality, an agency indicated by the legislature, and not selected by the people of the precinct. The court therefore, in that case, sustained the constitutional authority of the legislature to authorize this county court to act as the agent of the precinct, and for it to issue and deliver their bonds without asking the consent of the people of the precinct. See, also, *County Judge Shelby Co.* v. *Shelby R. Co.* 5 Bush, 225; *Bracken Co. Ct.* v. *Robertson Co. Ct.* 6 Bush, 70.

In the absence of a constitutional inhibition, the legislature of a state may, in its discretion, indicate the mode and the agency by which a debt is created by a city, town, county, or precinct in a county. The debt must be created for a governmental purpose, but if for such a purpose, there can be no necessity for a submission to a vote of the people of the city, town, or county, or other municipality. *Railroad Co.* v. *Otoe,* 16 Wall. 667; *Town of Queensbury* v. *Culver,* 19 Wall. 83; *County of Callaway* v. *Foster,* 93 U. S. 567; *Mount Pleasant* v. *Beckwith,* 100 U. S. 514.

In the case at bar the original debt had been created for a recognized public and governmental purpose, and the mode and an agency for an adjustment and settlement was indicated by the legislature, and this agency, representing the municipality, has compromised and settled the debt by giving new obligations for much less than the amount of the outstanding debt. The fact that the new obligations were for much less than the original debt makes no difference in the constitutional question, however.

It is insisted that if the act of 1878 be constitutional, still, it does not authorize the issuance of the bonds sued on, which are coupon bonds, payable in Cincinnati, Ohio, to the holders of the original bonds or *bearer*; and they are *ultra vires.* The act authorized the county court of Carter county to compromise and settle with the holders of the out-

standing coupon bonds. These bonds were payable out of the state
and to bearer, and the county court was empowered to execute to the
holders of said bonds and coupons, severally, the obligations of said
county of Carter, and those parts of the counties of Boyd and Elliott
as had been a part of Carter. The act provided that "said obliga-
tions shall contain such stipulations as to interest as may be agreed
upon by the court and holders of said bonds, but not at a greater rate
than six per centum per annum, payable semi-annually. Said obli-
gations shall be due and payable at such times and be for such
amounts as may be agreed upon by the court and the holder or hold-
ers of said bonds and coupons." The authority is to execute to the
holders of the outstanding bonds and coupons new obligations, due and
payable at such times and for such amounts as might be agreed upon
by the court and the holders of the outstanding bonds, bearing a semi-
annual interest at a rate to be agreed upon, not exceeding 6 per cen-
tum per annum.

It is insisted that "obligations," as used in this act, excludes the
authority to issue a coupon bond payable to the holder of the old
bonds and *bearer*, and only authorizes the county court to issue an
ordinary promissory note, non-negotiable, and payable to the holder
of the old bonds only. Obligations is a generic word, and includes
all kinds of contracts by which contracting parties bind themselves,
and, in the absence of limiting words, or the connection in which it
is used, will be construed in its generic sense.

I perceive nothing in the provisions of this act or the surrounding
circumstances which indicates that the legislature intended to limit
the obligations to be executed to the county's non-negotiable note.
The act does not indicate the place of payment, or limit it to this
state. It, in express terms, gives the county court authority to execute
the obligations, payable at such *times* and for such amounts as might
be agreed upon, and provide that the obligations should bear semi-
annual interest. The various provisions of the act itself show that it
was not expected or intended the county court would compromise and
settle a large debt, and pay the whole of it immediately, or within a
short time by taxation. The evident purpose of the act was to com-
promise and refund this debt, or a very large part of it. The word
"obligations" was probably used because of its broad meaning, and
it included coupon bonds as well as promissory notes, or a mere ac-
knowledgment of indebtedness. In adjusting this outstanding debt,
it might be useful to have the right to execute various kinds of obli-
gations, but, however that may have been, I think there is nothing to
limit the meaning of "obligations" to mere acknowledgment of in-
debtedness or non-negotiable notes.

The suggestion of the learned counsel, that the authority given in
this act to execute the obligations to the holders of the outstanding
bonds *severally* limits the meaning of obligations, is not sustainable.
If the word was used for any especial purpose, it was more likely to

indicate the legislative authority for the county court to compromise with any of the holders of the outstanding debts, and that the authority to compromise and issue new bonds was not conditioned upon all holders accepting the compromise.    The authority to execute coupon bonds is express, and there is no occasion to imply any authority which was exercised by the Carter county court, unless it be for making them payable to *bearer*.    The express authority is "to execute to the holder," and under this authority the bonds were executed to the holders of the outstanding bonds, *and bearer*.    If these bonds had been executed payable to the order of the holders of the outstanding bonds compromised, they would have been within the express authority given.    Why is not "payable to the holder and *bearer*" equally within the authority given?    But, waiving this view, I think that as the county court of Carter had authority to execute and deliver "obligations," which included coupon bonds, that, in the absence of any limitation as to the character of these obligations, that court had a right to make them payable in the usual way, and that is to *bearer* as well as to the holder of the outstanding bonds.

The case of *Supervisors* v. *Galbraith*, decided by the supreme court, (99 U. S. 216,) is a much stronger case than the one at bar, and settles this question in favor of the plaintiff.    There, the Mississippi legislature authorized the supervisors of Calhoun county to issue bonds in aid of a railroad company, and directed that the bonds be payable to the "president and directors of the Granada, Houston & Easton Railroad Company, and *their successors and assigns*."    "The bonds were made payable to the Granada, Houston & Easton Railroad Company, or *bearer*."    This was claimed to be a fatal defect, but the supreme court held the bonds valid.

There is no defect of parties, for the reason indicated, and for the further reason that if the county courts of Boyd and Elliott might be sued, there is nothing which compels the plaintiff to sue them.

The demurrer to the petition should be overruled; and it is so ordered.