### FIRST NAT. BANK OF CHICAGO v. UNITED STATES.

No. J-71.

Court of Claims.
March 3, 1930.

Harold V. Amberg, of Chicago, Ill., for plaintiff.

Robert N. Miller, J. Robert Sherrod, and John E. McClure, all of Washington, D. C., amici curiæ.

H. A. Cox, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen. (C. M. Charest and Dwight E. Rorer, both of Washington, D. C., on the brief), for defendant.

Before BOOTH, Chief Justice, and GRAHAM, GREEN, LITTLETON, and WILLIAMS, Judges.

WILLIAMS, Judge.

Decision in this case was originally rendered in favor of the plaintiff on May 6, 1929. A motion for new trial having been made by the defendant and granted, and the judgment vacated and the findings of fact and opinion withdrawn, the case is again before the court for consideration on merits.

The plaintiff seeks to recover the sum of $9,124.70, an alleged overpayment of its income and profits taxes for the year 1922.

The facts have been stipulated and the sole question to be determined is one of law, that is, whether or not interest paid by joint-stock land banks on their joint-stock land bank bonds is deductible from income under section 234(a) (2) of title 2 of the Revenue Act of 1921, 42 Stat. 254.

The plaintiff, the First National Bank of Chicago, filed for the year 1922 a consolidated income and profits tax return, which return consolidated the income of plaintiff and the following affiliated corporations:

First Trust & Savings Bank, an Illinois corporation, Chicago, Ill.

First National Investment Company, now First-Chicago Corporation, an Illinois corporation, Chicago, Ill.

National Safe Deposit Company, an Illinois corporation, Chicago, Ill.

First Trust Joint-Stock Land Bank of Chicago, a joint-stock land bank organized under the Federal Farm Loan Act of 1916, with its principal office in the city of Chicago, Ill.

First Trust Joint-Stock Land Bank of Dallas, a joint-stock land bank organized under the Federal Farm Loan Act of 1916, with its principal office in the city of Dallas, Tex.

In computing its income plaintiff deducted the amount of $78,807.80, this amount being interest paid during the year 1922 on joint-stock land bank bonds of the First Trust Joint-Stock Land Bank of Chicago and the First Trust Joint-Stock Land Bank of Dallas.

The Commissioner of Internal Revenue disallowed said deduction. A timely claim for refund was filed and rejected, and this action is brought for the recovery of the amount claimed on account of the disallowance of the right to deduct said interest, to wit, $9,124.70.

The First Trust Joint-Stock Land Banks of Chicago and of Dallas were organized under the Federal Farm Loan Act of July 17, 1916, 39 Stat. 360 (12 USCA § 641 et seq.), and the bonds in question were issued and sold to the public in accordance with the provisions of said act, and they were secured as required by said act by the deposit, with the proper farm loan registrars, of farmers' promissory notes, which in turn were secured by first mortgages on the borrowing farmers' land. The proceeds derived by the joint-stock land banks from the issue and sale of said bonds were used in making new loans to farmers, which were secured in precisely the same manner as hereinabove stated. Interest received by plaintiff on the farmers' notes and mortgages was not taxable as income, and was not so taxed for the year 1922. Interest on the said joint-stock land bank bonds is not taxable as income, and the holders of such bonds were not taxed on such income for the year 1922. The farmers' notes and mortgages provide for the payment of the loan on an amortization plan, as provided in section 12 of the Federal Farm Loan Act (12 USCA § 771), covering a period of thirty-three years, except, at the option of the borrowing farmer, it may be paid sooner. Joint-stock land banks are not permitted to engage in any business, except that of making loans to farmers and issuing bonds.

Section 234 of the Revenue Act of 1921 reads:

"(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(2) All interest paid or accrued within the taxable year on its indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities * * * the interest upon which is wholly exempt from taxation under this title."

Neither the Joint-Stock Land Bank of Chicago, nor the Joint-Stock Land Bank of Dallas had any taxable income for the year

1922, and neither of these institutions as such paid income or profits taxes for that year. The question of the deductibility of the interest paid by them on their outstanding bonds arises solely because of their affiliation during the year with plaintiff and other corporations having taxable incomes, and the deduction is sought from their consolidated income. This fact, of course, does not affect the right of the plaintiff to have the deduction claimed if the joint-stock land banks with which it was affiliated during the year would have had a right to the deduction had they filed individual returns for the year.

Joint-stock land banks, not being permitted to engage in any business, except that of making loans to farmers and issuing their bonds to procure the necessary funds therefor, do not ordinarily have income subject to taxation, and so long as such banks operate as individual and separate institutions, it cannot make the slightest difference whether they have or do not have the right to deduct the interest paid on their bonds. Their income is tax exempt, and consequently the right to make deductions therefrom means nothing. When, as in the instant case, joint-stock land banks are affiliated with banking corporations that do have taxable incomes, the question assumes importance, as the interest deduction, if allowed, reduces the tax liability of the affiliated group—even then, however, it in no way affects the joint-stock land banks included in such consolidation. They have no taxable income and they pay no taxes.

The plaintiff contends: (1) That the interest deduction denied in respect of indebtedness incurred or continued to purchase or carry obligations or securities, the interest upon which is wholly exempt from taxation under this title, has no reasonable relation or logical application to indebtedness incurred by joint-stock land banks on their bonds to provide funds to make loans to farmers on their "first mortgages" in contemplation of the Federal Farm Loan Act, and there is no reasonable ground on which to attribute any contrary intent to Congress. (2) That the face value construction of the exception clause, to the effect that such indebtedness of joint-stock land banks is not "indebtedness incurred or continued to purchase or carry obligations or securities, the interest upon which is wholly exempt from taxation under this title," is simple, direct, and unambiguous. (3) To class a joint-stock land bank indebtedness on its bonds as "indebtedness incurred or continued to purchase or carry obligations or securities, the interest

upon which is wholly exempt from taxation under this title," imputes to the Congress an intent which is inconsistent with the clear intent manifested by the Congress in the Federal Farm Loan Act.

It is particularly urged that—

(a) The loaning of money by joint-stock land banks to farmers on their "first mortgage" security is not a "purchase or carry" in contemplation of the interest deduction exception clause, section 234 (a) (2), and consequently the exception is not applicable to such indebtedness of joint-stock land banks represented by their bonds.

(b) The indebtedness of joint-stock land banks represented by their bonds is not incurred or continued to "purchase or carry obligations or securities * * * the interest upon which is wholly exempt from taxation under this title," in that the only possible exemption under this title would be on the theory that "first mortgage" notes executed to joint-stock land banks, evidencing loans to farmers, are "securities issued under the provisions of the Federal Farm Loan Act" in contemplation of section 213 (b) (4) (b), and such "first mortgage" notes are not "securities issued under the provisions of the Federal Farm Loan Act."

(c) "Obligations or securities" in contemplation of the interest deduction exception clause are, in any event, only such obligations or securities as are designated in the interest exemption clause, section 213 (b) (4). Farmers' mortgage notes evidencing such loans to them by joint-stock land banks do not fall within the "obligations" or "securities" designated in the interest exemption clause, section 213(b) (4) (b). Consequently, the indebtedness of the joint-stock land banks incurred to provide funds to make such loans to farmers is not incurred to purchase or carry "obligations or securities" in contemplation of section 234(a) (2), and therefore the interest on such indebtedness is deductible, irrespective of the source of the exemption granted in respect of interest paid to joint-stock land banks on such farmers' first mortgage notes.

(d) The interest deduction exception phrase "exempt from taxation under this title" is the equivalent of "exempt (from taxation) under this title," referring to exemptions contained in interest exemption section 213(b) (4) (b) and applies as set forth in (b) above.

Bonds issued by joint-stock land banks constitute "indebtedness" of such banks. This indebtedness is incurred and continued

by the banks to procure funds to loan to farmers on their notes secured by first mortgages, the interest of which is wholly tax exempt.

■ The question is: Does this "indebtedness" of the joint-stock land banks constitute an indebtedness incurred or continued to purchase or carry the notes and first mortgages of borrowing farmers?

The plaintiff contends that it does not. That lending money to farmers on long-time loans, secured by notes and mortgages, is not the purchasing and carrying of such notes and mortgages.

"Purchase" is defined by Webster's New International Dictionary as—

"(2) Law: Technically, to acquire (real estate) by any means whatever other than descent or inheritance.

"(3) To obtain (anything) by paying money or its equivalent; the acquisition of title to, or property in, anything for a price; buying for money or its equivalent."

By the New Standard Dictionary as—

"Purchase: (1) To obtain or secure as one's own by paying or promising to pay a price. (3) Law: (1) To acquire (property) by one's own act or agreement, as distinguished from the act or mere operation of law.

"Synonym: Acquire; bargain for; barter for; get; obtain; procure; secure."

"This term ['purchase'], in its general signification, and which is the legal sense of it, includes all modes of acquiring property, except by descent, and of course it embraces a devise." McCartee v. Orphan Asylum, 9 Cow. (N. Y.) 437, 18 Am. Dec. 516.

"The payee of a note is the purchaser thereof, if he advances money or otherwise parts with valuable consideration therefor." 8 C. J. 468, 469, 470.

The word "carry" is defined in 1 Words and Phrases, Second Series, p. 577, as follows: "The term 'carry,' as used in a contract by which one of the parties to a contract for the purchase of a patent right agreed to 'carry' the interest of another party who was to have a part interest therein, means 'advance' the money to pay his interest. Mann v. Urquhart, 89 Ark. 239, 116 S. W. 219, 222."

Webster's International Dictionary contains the following definition: "16 Com. To bear the charges or burden of holding or having, as stocks, merchandise, etc., from one time to another; to keep on one's books as a debtor * * * to bear * * * to support."

New Standard Dictionary defines the word "carry": "10. To keep on hand; maintain; keep up; support; hold; as to carrying a full stock; to carry life insurance."

The words "purchase" or "carry," in our opinion, unless they are to be given a technical meaning different from that in which they are ordinarily used, are apt words and characterize precisely the acquisition of and the holding of farmer's notes and mortgages by joint-stock land banks. We think, therefore, the bonds of joint-stock land banks constitute indebtedness incurred and continued to purchase and carry the tax-exempt notes and mortgages of farmers executed and issued under the provisions of the Federal Farm Loan Act of 1916.

■ The plaintiff next contends that the notes and mortgages of farmers given and executed under the provisions of the Federal Farm Loan Act are not "obligations" or "securities" within the meaning of the exception to the interest-deduction clause of section 234 of the 1921 Revenue Act.

"Obligations is a generic word, and includes all kinds of contracts by which contracting parties bind themselves, and, in the absence of limiting words, or the connection in which it is used, will be construed in its generic sense." Sinton v. County of Carter (C. C.) 23 F. 535, 538.

"The word ['obligations'] has a very broad and comprehensive legal signification and embraces all instruments of writing, however informal, whereby one party contracts with another for the payment of money or the delivery of specific articles." Bouvier's Law Dictionary. State v. Campbell, 103 N. C. 344, 9 S. E. 410; Morrison v. Lovejoy, 6 Minn. 353 (Gil. 224).

"Securities" is defined by standard authorities as follows:

Webster's New International Dictionary: "Security—That which secures or makes safe. Specif.: something given, deposited, or pledged; to make secure or certain; or certain the fulfillment of an obligation; the payment of a debt. Specif.: An evidence of debt or of property, as a bond; a stock certificate or other instrument, etc.; a document giving the holder the right to demand and receive property not in his possession."

Abbott's Law Dictionary: "Securities (plural)—Is in use as a general term for written assurances for payment of money; evidences of debt."

Black's Law Dictionary: "Security—The term is usually applied to an obligation, pledge, mortgage, deposit, lien, etc.; given

by a debtor in order to make secure the payment or performance of his debt, by furnishing the creditor with a resource to be used in case of failure in the principal obligations."

If the language of the interest-deduction clause, and the exception therein, left any doubt whatever, that the first mortgage notes are securities, that doubt is completely removed by the plain language of the Federal Farm Loan Act under the provisions of which such first mortgages are acquired by joint-stock land banks, as they are clearly designated in the act itself as securities.

Section 18 of the act (12 USCA §§ 841, 842) provides:

"Any Federal land bank, or joint-stock land bank, which shall have voted to issue farm loan bonds under this chapter shall make written application to the Federal Farm Loan Board, through the farm loan registrar of the district, for approval of such issue. With said application said land bank shall tender to said farm loan registrar as collateral security first mortgages on farm lands qualified under the provisions of section 771, sections 801–807, or sections 811–821 of this chapter, or United States Government bonds, not less in aggregate amount than the sum of the bonds proposed to be issued. Said bank shall furnish with such mortgages a schedule containing a description thereof and such further information as may be prescribed by the Federal Farm Loan Board.

"Upon receipt of the application * * * said farm loan registrar shall verify the schedule * * * and shall transmit said application and said schedule to the Federal Farm Loan Board, giving such further information pertaining thereto as he may possess. The Federal Farm Loan Board shall forthwith cause to be made such investigation and appraisement of the securities tendered as it shall deem wise, and it shall grant in whole or in part, or reject entirely, such application."

While bonds of the Government of the United States are authorized to be tendered and used as collateral security for farm loan bonds, it is a matter of common knowledge that they are not so used by joint-stock land banks for that purpose to any appreciable extent.

■ The record discloses that farmers' notes and first mortgages were the only collateral security tendered by the Joint-Stock Land Banks of Chicago and Dallas, with their various applications to the Federal Farm Loan Board for authority to issue farm loan bonds. They were the only securities which the Federal Farm Loan Board under the provisions of section 18 of the Federal Farm Loan Act could investigate and appraise in passing upon and approving applications to issue the bonds in question. If plaintiff's contention is correct that these notes and first mortgages are not securities within the meaning of the Federal Farm Loan Act, no investigation or appraisement of securities tendered was ever made by the Federal Farm Loan Board in passing upon the applications of the Joint-Stock Land Banks of Chicago and Dallas to issue farm loan bonds, because no securities were ever tendered. To direct the Federal Farm Loan Board to investigate and appraise the securities tendered as collateral security for farm loan bonds, and then say, that farmers' first notes and mortgages, which constitute the only collateral security tendered, as was the case here, are not securities within the meaning of the Federal Farm Loan Act, amounts to an absurdity. The framers of a statute are presumed to know and understand the meaning of the words used, and where the language used is clear and free from ambiguity, and not in conflict with other parts of the same act, the courts must assume the legislative intent to be what the plain meaning of the words used import.

That Congress intended to make the notes and first mortgages of borrowing landowners, securities, by the language used in section 18 of the Federal Farm Loan Act, is quite clear from other provisions of the act and by the essential functions they perform in the whole scheme of the joint-stock land bank system. Farmers' notes and first mortgages are repeatedly referred to in the act as collateral security, and in section 26 of the act (12 USCA § 931) they are placed on the same basis and given the same legal status as the farm loan bonds issued under the provisions of the act.

Section 26 reads: "First mortgages executed to Federal land banks, or to joint-stock land banks, and farm loan bonds issued under the provisions of this chapter, shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation."

The farm loan bonds are evidences of indebtedness of the joint-stock land banks. The farmers' notes and mortgages are evidences of indebtedness of borrowing farmers. They are of equal importance in the

operation of joint-stock land banks, and they are each made instrumentalities of the government of the United States in the act providing for the creation of such banks.

The function of these two instrumentalities in the operation of the joint-stock land bank system is well stated in an opinion of Attorney General T. W. Gregory (Opinions of Attorneys General, Volume 31, 105):

"I do not deem it necessary to analyze the act in detail. It is sufficient to say that the mortgages and farm loan bonds are of the very essence of the system created by it. The original capital of the Federal land banks is to be loaned, through the agency of national farm loan associations, to bona fide cultivators of the soil on first mortgages on farm lands. When a sufficient amount in such mortgages has accumulated, they are to be turned over to a 'registrar' appointed by the farm loan board, and, with the approval of that board, farm loan bonds are issued by the land bank and sold. With the proceeds further loans are made on mortgages, which mortgages in their turn become the basis for an additional issue of bonds. This continuous flow and reflow of mortgages and bonds constitutes the prime function of the whole system."

The provisions of section 18 of the Federal Farm Loan Act (12 USCA § 841) designating these instrumentalities of the government of the United States (farmers' notes and first mortgages) securities are in harmony with the manifest intent of the other provisions of the act and of the whole scheme underlying the creation and operation of joint-stock land banks.

We are of the opinion that the notes and first mortgages owned and held by joint-stock land banks, and used by them as collateral security for the payment of their bonds, are securities under the provisions of the Federal Farm Loan Act of 1916, and that as such the interest upon them is specifically exempted from taxation under section 213(b) (4) of the Revenue Act of 1921. It follows that under the provisions of section 234(a) (2) of that act the interest paid by joint-stock land banks on their farm loan bonds, which is indebtedness incurred, and continued to purchase and carry such securities, come within the exception and is not deductible from income.

■ The plaintiff urges the deduction of the interest paid on its farm-loan bonds should not be denied for the reason that such denial tends to thwart or defeat the purposes sought to be attained in the enactment of the Federal Farm Loan Act, to wit, to enable farmers to obtain long-time loans on the security of their lands at reasonable rates of interest. It is contended denial of the deduction sought would impose a burden on the joint-stock land banks contrary to the intent of the Federal Farm Loan Act and not contemplated in the exception to the interest-deduction clause of section 234(a) (2).

Three agencies are created by Congress under the provisions of the Federal Farm Loan Act to carry out the purposes of the act, the federal farm banks, national farm loan associations, and joint-stock land banks. The national farm loan associations are local organizations of landowners who desire to borrow money on their lands from federal farm banks.

The provisions of the act provide that the Continental United States, excluding Alaska, shall be divided by the Federal Farm Loan Board into twelve federal land bank districts, in each of which districts shall be established one federal farm land bank. Each federal farm bank is required to have a minimum capital stock of $750,000.00. The capital stock is divided into shares of $5 each and may be subscribed for and held by any individual, firm, or corporation, or by the government of any state or of the United States. It is provided that in case the capital stock of a federal farm bank is not subscribed within thirty days after the books of such banks are opened for subscription for its stock, it shall be the duty of the Secretary of the Treasury to subscribe the balance thereof on behalf of the United States. An appropriation of $100,000,000 was provided in the act for the purpose of carrying into effect the provisions of the act. Practically all the capital stock of the twelve federal land banks was subscribed by the Secretary of the Treasury and carried by the government.

Joint-stock land banks are organized on a basis entirely different from that of the federal farm banks. The government of the United States is expressly prohibited from subscribing to or purchasing any of their capital stock.

There are no requirements as to the location of joint-stock land banks nor any limitation on the number that may be organized. They may be organized on the application of any number of natural persons not less than ten and with a capital stock not less than $250,000.

It is true, as contended by the plaintiff, the creation of joint-stock land banks was authorized on the theory that they would

serve as useful agencies in accomplishing the primary purposes of the farm loan act.

However, the sole purpose of the stockholders of joint-stock land banks is to make profits out of their invested capital. It was the intent of the farm loan act that these banks should be profit-making institutions. Unless investors could make profits there would be no inducement to them to furnish the capital required for the organization of such banks, and obviously they would not be organized. In order that they might be profit-earning institutions, Congress in the farm loan act conferred on joint-stock land banks benefits and privileges never before given to any corporation, agency, or institution financed by private capital and organized and operated for profit.

Joint-stock land banks are permitted to do two things, and nothing else—loan money to farm owners, secured by first mortgages on their land, and to issue and sell farm loan bonds.

The interest received by the banks on the notes and mortgages of borrowing farmers to whom they loan money is exempt from all taxation. The interest on their outstanding bonds is exempt from taxation. They are permitted to receive interest on loans to farmers to the extent of 1 per cent. in excess of the rate of interest paid by them on their bonds. Being permitted to issue bonds and make loans to fifteen times the amount of their capital stock, they have a possible maximum annual profit of 15 per cent. on their invested capital, less expenses of operation. In addition to this, they are exempted from many of the restrictions imposed in the farm loan act on the federal farm banks as to interest, the amount of money that may be loaned to a single borrower, the per cent. of the valuation that may be loaned upon, etc.

It will be seen that these joint-stock land banks, so far as their stockholders, are concerned, are corporations which are organized for profit, and when managed and operated in the manner contemplated in the farm loan act they cannot be otherwise than highly profitable.

The value of the privileges and exemptions they enjoy under the law when compared with investment corporations organized as a private business for the purpose of making farm loans is strikingly evident.

The interest received by a private corporation on its loans would be taxable, and if it issued and marketed bonds upon its loans to obtain more money to reloan, the income from its bonds would be subject to federal taxation, and both the principal and the interest would be subject to state taxation against the holders thereof.

It was believed at the time of the enactment of the farm loan act, as shown by reports of committees in the House and Senate, and by the debates in both Houses of Congress, that these exceptional advantages and benefits would enable the joint-stock land banks to practically monopolize the farm-loan investment field. If these banks have not been as prosperous in all cases as was anticipated by Congress at the time the law was enacted, as has been intimated in argument, is not a matter for consideration here. The undoubted purpose of Congress was to create a system of rural credits that would insure long-term loans to farm owners at a low rate of interest. To assist in accomplishing this purpose Congress gave to the joint-stock land banks privileges and exemptions that would make investment in the capital stock of the banks inviting and profitable.

These liberal provisions of the farm loan act, it is contended, indicate the intent of Congress that interest paid by these banks on their farm loan bonds does not come within the intent and meaning of the exception to the interest-deduction clause of section 234(a) (2) of the Revenue Act of 1921, and that holding it does come within the exception is contrary to the manifest intent and purposes of the farm loan act itself. We do not agree with this contention, and we find nothing in the provisions of the farm loan act to indicate any intent on the part of Congress that joint-stock land banks should be given any benefits or exemptions other than those specifically set out in the act. Congress exempted from taxation of every kind and character the income derived by these banks on loans made by them to landowners and also made the interest on the bonds issued by them wholly tax exempt to the holders thereof in every respect, and made it possible for them to earn profits on fifteen times the amount of their invested capital. These generous provisions afford no valid or logical reason, in our opinion, for construing the meaning of section 234(a) (2) of the Revenue Act of 1921 in any manner other than by giving to the language of the clause the effect which the plain and obvious meaning of the words used convey. The fact that Congress in the farm loan act gave generous and unusual benefits and exemptions to joint-stock land banks does not indicate the purpose or intent of Congress that they should enjoy other benefits and exemptions not given in the act.

Construing the language of the exception to the interest-deduction clause in section 234 (a) (2) to mean what the words used import deprives the plaintiff of no benefit the provisions of the farm loan act accord to it. On the other hand, to give the language used the construction contended for by the plaintiff would give to it a benefit nowhere granted in the act.

Plaintiff contends that the purpose of the exception in the interest-deduction clause of section 234(a) (2) was to forestall deliberate tax avoidance by taxpayers. That is, it was to prevent taxpayers incurring indebtedness to purchase tax-exempt securities and thereby get in addition to the exemption of interest received on such securities a deduction of the interest paid on the indebtedness so incurred; that the interest deduction should be disallowed only in those cases where the indebtedness is incurred with a view to tax avoidance. The plaintiff claims the indebtedness incurred by joint-stock land banks on their bonds is not an indebtedness incurred with a view to tax avoidance, and that the banks are therefore entitled to deduct the interest paid on such indebtedness.

There is no doubt that to forestall tax avoidance was one . of the purposes sought to be accomplished in the enactment of the exception in the interest-deduction clause. However, the congressional intent to deny the interest deduction only where the indebtedness was incurred by the taxpayer for the purpose of tax avoidance is not expressed either directly or indirectly in the language used in the exception. The language of the interest-deduction clause including the exception is both explicit and comprehensive.

■ It is a fundamental "rule of statutory construction that the intent of the lawmaker is to be found in the language [of the statute]." U. S. v. Goldenberg, 168 U. S. 95, 18 S. Ct. 3, 4, 42 L. Ed. 394.

"To get at the thought or meaning expressed in a statute, * * * the first resort, in all cases, is to the natural significa- tion of the words, in the order of grammatical arrangement in which the framers * * * have placed them. If the words convey a definite meaning, which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning, apparent on the face * * * must be accepted." Lake County v. Rollins, 130 U. S. 670, 9 S. Ct. 651, 652, 32 L. Ed. 1060.

There is no ambiguity in the language used in section 234(a) (2). The meaning of the words used is clear and free from doubt. Deduction may be had of "all interest paid or accrued within the taxable year on its indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from taxation under this title," as income to the taxpayer.

The language of the exception is general and in our opinion denies to a taxpayer the right of deduction of interest paid on indebtedness incurred or continued for the purpose of enabling the taxpayer to purchase or carry tax-exempt obligations or securities without regard to the reasons actuating the taxpayer in incurring such indebtedness.

The construction urged by the plaintiff if adopted by the court would in effect require the court to rewrite the exception to the interest-deduction clause by adding the words, "where such indebtedness is incurred with a view to tax avoidance."

■ That would be the exercise of a legislative power, which under the Constitution the court does not possess. Courts cannot, by interpretation, change the plain meaning of a statute on the theory that there existed in the minds of its framers a latent unexpressed intent not conveyed in the language used.

We cannot assume, there being nothing in the language used to warrant such assumption, that the full intent and purpose of Congress are not clearly expressed in the language of ·section 234(a) (2) of the Revenue Act of 1921. Many of the leading members of both the Senate and House who framed the Revenue Act of 1921 were members of Congress in 1916 and participated in framing and passing the Federal Farm Loan Act. They were perfectly familiar with its provisions and its purposes and had they intended that the exception in the interest-deduction clause of section 234(a) (2) should not apply to interest paid by joint-stock land banks on their indebtedness incurred to purchase and carry the farmers' tax-exempt notes and first mortgages, which are securities under the provisions of the farm loan act, they would, we think, have expressed such intent by the use of appropriate language.

It is our opinion, therefore, that plaintiff's petition should be and it is hereby dismissed. It is so ordered.

BOOTH, Chief Justice, and LITTLE- TON, GREEN, and GRAHAM, Judges, concur.