The **WISCONSIN CHEESEMAN, INC.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. C–65–86.

United States District Court
W. D. Wisconsin.

Jan. 17, 1967.

Edwin C. Pick, Madison, Wis., for plaintiff.

Mitchell Rogovin and D. J. Dinan, Tax Division, Dept. of Justice, Washington, D. C., Edmund A. Nix, U. S. Atty., Madison, Wis., for defendant.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

The Wisconsin Cheeseman, Inc., a Wisconsin corporation, is here suing the United States to recover corporate income taxes and interest thereon paid on July 23, 1963, in the amount of $5,803.30. This sum had been assessed as due for the taxable years ending July 31, 1960, July 31, 1961, and July 31, 1962. This court has jurisdiction by reason of 28 U.S.C. § 1346(a) (1).

There is no dispute between the parties as to the amount paid by plaintiff or the amount which it is entitled to collect if it prevails in this action. The sole question is whether during the years in question plaintiff had the right to deduct certain interest expense.

The Wisconsin Chesseman, Inc., packages for retail sale various kinds of cheese. Virtually all of plaintiff's products are purchased from it during the last three months of each calendar year for holiday gifts. The bulk of these sales are the result of mail orders solicited by an extensively distributed catalogue published in the late summer of each year. The Wisconsin Cheeseman, Inc., is a classic example of a seasonal business. Its financial needs and sources reflect the seasonal nature of the business. Since receipts from sales generally lag one to two months behind the date of incurring the operating expenses necessary to produce sales, plaintiff must obtain a substantial amount of short term financing each year. The rapid growth of sales which The Wisconsin Cheeseman, Inc., has enjoyed in recent years has resulted in increased short term needs each year.

During the years involved in this tax suit, the pattern of plaintiff's financing was as follows. Each January and February plaintiff was in possession of substantial sums of money, the receipts of

the year's sales. After paying existing short term indebtedness and other current obligations, the balance was used to purchase high quality municipal securities. As capital needs developed during the ensuing year, plaintiff obtained short term financing, using its municipal securities as collateral for the bulk of these loans. Plaintiff was able to borrow almost 100% of value when such collateral was used. As receipts came in during the following winter, these short term loans were repaid. The balance of the receipts was used to increase the company's municipal bond holdings. Since plaintiff's operations were growing and profitable, its bond holdings increased over the years. It appears from Exhibit F attached to the stipulation of facts that plaintiff had municipal bond holdings of $138,168.29 on August 1, 1959, and holdings of $218,542.70 on July 31, 1962. In addition during part of the period in question plaintiff had a bank mortgage on one of its buildings.

During the tax years involved here, plaintiff excluded income received from its municipal bonds from gross income, as 26 U.S.C. § 103(a) entitled it to do. During the same time plaintiff deducted from its gross income all the interest expense it incurred on its short term loans and its real estate mortgage, relying on 26 U.S.C. § 163(a).

The government contends that the provisions of 26 U.S.C. § 265(2) make some of these interest deductions improper:

"§ 265. Expenses and interest relating to tax-exempt income.

"No deduction shall be allowed for—

\* \* \* \* \* \*

"(2) Interest.

Interest on indebtedness incurred or continued to purchase or carry obligations \* \* \* the interest on which is wholly exempt from the taxes imposed by this subtitle."

Thus, the issue arises whether the interest deducted by plaintiff falls within the plain and ordinary meaning of the words: "interest on indebtedness incurred or continued to \* \* \* carry [tax-exempt] obligations \* \* \*."

Webster's New Collegiate Dictionary (1953) gives to "carry" this meaning, among others: "to hold for future sale, settlement, etc." It is this meaning of "carry" which we think appropriate to this statute. See First Nat'l Bank of Chicago v. United States, 38 F.2d 925, 930 (Ct.Cl.1930), aff'd, 283 U.S. 142, 51 S.Ct. 378, 75 L.Ed. 913 (1931). We cannot agree with plaintiff's suggestion that "carry" was used only as a variation of "purchase." The word "to", as used here, means "in order to" or "for the purpose of." Thus, we must inquire whether the indebtedness was incurred or continued in order to hold, or for the purpose of holding, tax-exempt obligations for future sale.

Plaintiff contends that it incurred the indebtedness in order to meet, and for the purpose of meeting, its unusually heavy seasonal financing needs. Defendant contends that plaintiff incurred the indebtedness in order to carry, and for the purpose of carrying, the municipal securities. Obviously both propositions are accurate in a sense, and each is incomplete in a sense. Plaintiff links "purpose" to the choice which plaintiff made among the various objects for which the money might have been expended. Defendant links "purpose" to the choice which plaintiff made among the various alternative methods by which the money might have been obtained.

For the purpose of this tax dispute the critical decision on the part of the plaintiff was not the decision to obtain cash for its seasonal needs, but rather the decision to select one among several alternative methods of obtaining the cash, namely, the alternative of incurring an indebtedness. The purpose which plaintiff sought to serve by this decision is the purpose which is dispositive of this dispute; the conclusion is inescapable that this purpose was to make it possible for the plaintiff to carry its municipal securities.

The proposition may be demonstrated in this manner: To accomplish the pur-

pose of obtaining cash to meet plaintiff's seasonal needs, it was not a condition precedent that indebtedness be incurred. To accomplish the purpose of carrying the municipal securities, it was a condition precedent that indebtedness be incurred.

■ I conclude that, within the plain meaning of the statutory language, the plaintiff incurred the indebtedness in order to carry, and for the purpose of carrying, the municipal obligations. Thus, it incurred indebtedness in order to hold, retain or "carry" the tax-exempt municipal bonds. I find nothing in the remainder of Section 265 or in other sections of the Internal Revenue Code which persuades me to depart from the plain meaning of the language of Section 265(2).

From the stipulation of facts it appears that there is attrition of about one per cent of the price of municipal bonds at the time of purchase, and another one per cent at the time of sale; that their value does not fluctuate as does that of stocks and industrial bonds; and that one can borrow more against their market value than against that of stocks or industrial bonds. These propositions were partially amplified by evidence received at the trial. But the issue is not whether plaintiff is free to use this financing device, nor whether other devices may be more costly, nor whether certain financing costs are peculiar to the radically seasonal quality of plaintiff's business. The issue is whether, if plaintiff chooses for these understandable reasons to employ this device, it may deduct its interest payments on the loan for the purpose of determining its income tax. These considerations are not helpful in the application of the statutory language.

Plaintiff relies on the holdings and reasoning of two 1932 cases. Both cases, like the present one, concern active, nonfinancial businesses. In R. B. George Machinery Co. v. Commissioner, 26 B.T.A. 594 (1932), the taxpayer received deficiency warrants instead of cash from the state of Texas for machinery sold to the state. The interest on these warrants was tax exempt. The taxpayer needed cash operating funds. It obtained this cash by borrowing from a bank, using the warrants as security. "[S]uch cash could only be obtained by transferring the deficiency warrants in the manner set forth below. * * *" Ibid. "* * * [I]t preferred at all times to get its cash out of them." Id., at 598. The court held that the interest paid to the banks on these loans was deductible. Sioux Falls Metal Culvert Co. v. Commissioner, 26 B.T.A. 1324 (1932), is quite similar. There tax-exempt South Dakota warrants were received in exchange for goods. Operating funds were obtained through borrowing, since "petitioner was not able to sell all of the warrants received." Id. at 1325. "The testimony is that whenever possible the petitioner sold the warrants." Id. at 1327. The interest paid on the loan was held deductible. Both opinions make it explicit that the taxpayers could not sell their warrants. Therefore, in neither case was the purpose of the loans to "carry" the warrants. To the extent that the opinion in either case implies that section 265(2) applies only to "purchase" as contrasted with "carry" situations, I disagree.

There has been cited to me the opinion of Chief Commissioner Bennett which has been submitted by him to the United States Court of Claims in Illinois Terminal R. R. v. United States, No. 16–64, Ct.Cl., April 25, 1966. While there are distinctions to be drawn between the facts of *Illinois Terminal* and the facts here, the Chief Commissioner's analysis is similar to that which I have expressed in the case at bar, and his recommendation is that deduction of interest on the bank loan be denied.

■ Plaintiff has made extensive argument based on the legislative history of section 265(2). Resort to legislative history is proper only when there is ambiguity in a statute, either on its face or as applied to the facts of a particular case. No such statutory ambiguity is present here. In any event, the legisla-

tive history is itself ambiguous and incomplete and affords no clear guidance even if looked to.

It is apparent that the Congressional purpose was to deprive taxpayers of a double benefit in connection with the tax treatment of interest. Congress did not wish to grant a deduction for interest payments by a taxpayer who holds securities the interest from which is not taxable. Plaintiff's financing methods fall within both the specific words of section 265(2) and its purpose. I am not persuaded that Congress meant to preserve to seasonal businesses the double tax benefit which was possible before section 265(2) and its predecessors were enacted.

It is hereby ordered that judgment be entered dismissing the complaint of The Wisconsin Cheeseman, Inc., praying for a refund of the tax paid.