HOWARD S. SCAR AND ETHEL M. SCAR, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 16586–82.     Filed November 17, 1983.

*Mark Bernsley*, for the petitioners.

*Charles W. Jeglikowski* and *Marc J. Winter*, for the respondent.

## OPINION

TANNENWALD, *Judge*: This case is before the Court on petitioners' motion to dismiss for lack of jurisdiction, petitioners' motion for summary judgment, and respondent's motion for leave to file amendment to answer.[1]

Petitioners filed a joint income tax return for the tax year 1978 with the respondent's Service Center at Fresno, Calif., on or about September 3, 1979 (having previously obtained an extension of time to file the return through September 17, 1979). The return disclosed a tax liability of $3,269.

---

[1]Pursuant to an order of the Court, petitioners' motion to dismiss for lack of jurisdiction was assigned for hearing to Special Trial Judge Darrell D. Hallett and, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure, the post-trial procedures set forth in that Rule are not applicable. The hearing was held on Mar. 21, 1983. See 862–864 *infra*, with respect to petitioners' motion for summary judgment and respondent's motion for leave to file amendment to answer. Judge Hallett resigned on July 1, 1983, and the aforesaid motions have been assigned to Judge Theodore Tannenwald, Jr., for disposition.

On June 14, 1982, respondent mailed to petitioners what purported to be a notice of deficiency. The first page is a standard form letter 892, with petitioners' names and address and a statement that respondent had determined a deficiency with respect to petitioners' taxable year ending December 31, 1978, in the amount of $96,600. An attached Form 5278 entitled "Statement—Income Tax Changes" purports to explain how the indicated deficiency was arrived at. This form shows an adjustment to income in the amount of $138,000 designated as "Partnership—Nevada Mining Project." The Form 5278 has no information in the appropriate space for taxable income as shown on petitioners' return as filed. It shows as the "Total corrected income tax liability" the sum of $96,600 and indicates that this sum was arrived at by multiplying 70 percent times $138,000.

Another attached document, designated as "Statement Schedule 2," with the heading "Nevada Mining Project, Explanation of Adjustments," states as follows:

In order to protect the government's interest and since your original income tax return is unavailable at this time, the income tax is being assessed at the maximum tax rate of 70%.

The tax assessment will be corrected when we receive the original return or when you send a copy of the return to us.

The increase in tax may also reflect investment credit or new jobs credit which has been disallowed.

Also attached to the purported notice of deficiency is a document designated as "Statement Schedule 3," with the heading "Nevada Mining Project, Explanation of Adjustments" and the following statement:

It is determined that the alleged losses claimed by you in your income tax return for the taxable year(s) 7812 with respect to an alleged partnership known as NEVADA MINING PROJECT are not allowable because you have not established that the transactions in which the partnership was involved or in which you were involved with respect to the partnership were bona fide arm's length transactions at fair market value, that such transactions were entered into for profit, or that such transactions had any economic substance other than the avoidance of taxes.

If the determination as set forth above is not sustained, then it is determined in the alternative that the partnership loss is not allowed for the following reasons:

(1) It has not been established that partnership expenses have been incurred, or, if incurred, were ordinary and necessary business expenses.

(2) In addition, you have failed to establish any adjusted basis in the NEVADA MINING PROJECT partnership by way of capital investment, partnership indebtedness, or otherwise. To the extent that you do have any adjusted basis, the claimed loss(es) in excess thereof are not allowable.

(3) In any event, any loss is limited to the amount you had at risk as defined in Section 465 of the Internal Revenue Code, which amount has not been established.

Therefore, your taxable income is increased as shown below.

| Taxable Year(s): | 7812 |
|---|---|
| Loss(es) Reported: | ($96,600) |
| Loss(es) Corrected: | 0 |
| Adjustment: | 96,600 |

Petitioners timely filed a petition with this Court on July 7, 1982. In their petition, they allege that they have never been associated with the "Nevada Mining Project Partnership" and did not claim on their 1978 return any expenses or losses related to this venture. Respondent filed an answer denying the substantive allegations of the petition.

On December 6, 1982, petitioners filed their motion to dismiss for lack of jurisdiction. In support of their motion, petitioners contend: (1) A determination, the prerequisite of a valid notice of deficiency, was never made by respondent; (2) if a determination was made, no meaningful notice thereof was sent to the petitioners as required; (3) the notice sent to petitioners advises of an assessment of tax concurrently with the notice, which action is inconsistent with the issuance of a notice of deficiency and fatal to its validity.

In his memorandum filed on February 4, 1983, in connection with his opposition to petitioners' motion, as well as at the hearing held on March 21, 1983, respondent agreed with petitioners' statement that petitioners "were not partners of any mining partnership nor did they have any investment or involvement in any mining activity. No item reported on Petitioners' income tax return involved any mining operation."

On March 25, 1983, petitioners filed a motion for summary judgment based upon respondent's concession.

On April 5, 1983, respondent filed a motion for leave to file amendment to answer. In his proposed amendment to answer, respondent seeks to disallow deductions claimed by petitioners with respect to a video tape production on their 1978 return,

and to assert a resulting deficiency in the amount of $10,374. A letter dated November 29, 1982, from respondent's counsel to petitioners' counsel attached to respondent's memorandum sets forth a revised calculation of the asserted deficiency for the taxable year 1978 based on such disallowance in the amount of $10,374 and indicates that, prior to that time, a statutory notice of deficiency had been issued to petitioners disallowing such deductions for the taxable year 1977. At the hearing on March 21, 1983, petitioners' counsel admitted contact with respondent with respect to the taxable year 1977. The Court's records reveal that a statutory notice of deficiency for the taxable year 1977 disallowing deductions in respect of a video tape production was issued to petitioner on April 9, 1981, and that a petition was filed by petitioners on June 30, 1981.

At the hearing on petitioners' motion to dismiss for lack of jurisdiction, respondent's counsel explained the circumstances leading to the issuance of the purported notice of deficiency to petitioners and its erroneous association of petitioners with the Nevada Mining Project. Petitioners' 1978 return was placed in a "suspense status" by the Los Angeles District Director because of the District Director's association of the return with a tax shelter project. The tax shelter project was identified only by a "freeze code" number. In using respondent's computer, respondent's agents in the Los Angeles District transposed digits in the freeze code number and obtained proposed adjustment language for the Nevada Mining Project which was being audited by the Reno District Director. The correct freeze code number would apparently have produced information concerning Executive Productions, Inc., a video tape tax shelter which respondent now contends petitioners were involved in and with respect to which petitioners claimed deductions on their 1978 return. At no time prior to the issuance of the purported deficiency notice for the taxable year 1978 did respondent's agents make an effort to obtain petitioners' 1978 return or to contact petitioners.

Petitioners' primary position with respect to their motion to dismiss for lack of jurisdiction is founded on the assertion that

respondent has not "determined that there is a deficiency" within the meaning of section 6212(a).[2] Petitioners argue that it is apparent from the face of the attachments to the purported notice of deficiency that the alleged "determination" bears no relationship to the return which the petitioners filed or should have filed and that respondent's "determination" did not satisfy the definition of "deficiency" in section 6211(a), in that he did not determine that there was an excess of the amount of tax allegedly due from petitioner over the amount shown as the tax on petitioners' return.[3] Respondent argues that the purported notice of deficiency, which was concededly properly addressed, set forth the amount which was claimed to be owed as a deficiency and the taxable year involved and that this satisfied the statutory requirement of section 6212(a). We agree with respondent.

We start from the established principle that no particular form is required for a statutory notice of deficiency. *Commissioner v. Forest Glen Creamery Co.*, 98 F.2d 968, 971 (7th Cir. 1938); *Jarvis v. Commissioner*, 78 T.C. 646, 655–656 (1982). As Judge Learned Hand stated in *Olsen v. Helvering*, 88 F.2d 650, 651 (2d Cir. 1937), "the notice is only to advise the person who is to pay the deficiency that the Commissioner means to assess him; anything that does this unequivocally is good enough." See also *Commissioner v. Stewart*, 186 F.2d 239, 241 (6th Cir. 1951), revg. a Memorandum Opinion of this Court.

The requirements of section 6212(a) are met if the notice of deficiency sets forth the amount of the deficiency and the

---

[2]All statutory references herein are to the Internal Revenue Code of 1954 as amended. Sec. 6212(a) provides as follows:

SEC. 6212(a). IN GENERAL.—If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitle A or B or chapter 41, 42, 43, 44, or 45, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail.

[3]Sec. 6211(a) provides as follows:

SEC. 6211(a). IN GENERAL.—For purposes of this title in the case of income, estate, and gift taxes imposed by subtitles A and B and excise taxes imposed by chapters 41, 42, 43, 44, and 45 the term "deficiency" means the amount by which the tax imposed by subtitle A or B, or chapter 41, 42, 43, 44, or 45 exceeds the excess of—

(1) the sum of

(A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

(B) the amounts previously assessed (or collected without assessment) as a deficiency, over—

(2) the amount of rebates, as defined in subsection (b)(2), made.

taxable year involved. See *Foster v. Commissioner*, 80 T.C. 34, 229–230 (1983). It need not contain any particulars or explanations as to how the deficiencies were determined. See *Barnes v. Commissioner*, 408 F.2d 65, 68 (7th Cir. 1969), affg. a Memorandum Opinion of this Court. See also *Abatti v. Commissioner*, 644 F.2d 1385, 1389 (9th Cir. 1981), revg. on other grounds a Memorandum Opinion of this Court.[4]

We are satisfied that the deficiency notice herein meets the aforementioned standards insofar as any question of our jurisdiction is concerned. The fact that it subsequently develops even prior to trial that there was no deficiency on the basis of the grounds set forth in the deficiency notice is irrelevant. See *Hannan v. Commissioner*, 52 T.C. 787 (1969). The definition of a "deficiency" contained in section 6211(a) does not require a different conclusion. As we see it, this definition simply outlines the *method* by which a notice of deficiency should be constructed and does not affect the jurisdiction of this Court. To conclude otherwise would make it mandatory for the Court to go behind the deficiency notice where the petitioner raises the question of whether respondent utilized his tax return in constructing the notice. Such a procedure would fly in the face of the long-established principle that this Court will ordinarily not look behind a deficiency notice. *Riland v. Commissioner*, 79 T.C. 185, 201 (1982); *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327 (1974). Clearly, no constitutional considerations are involved herein which might justify an exception to this general rule. *Riland v. Commissioner, supra*; *Greenberg's Express, Inc. v. Commissioner, supra* at 328. Moreover, we note that, even in situations where the courts have gone behind a deficiency notice, they have not ruled that such notice was null and void, which would be the result herein if we accepted petitioners' contentions. See *Greenberg's Express, Inc. v. Commissioner, supra* at 328. But cf. *Llorente v. Commissioner*, 649 F.2d 152, 155 n. 4, 157 (2d Cir. 1981), modifying 74 T.C. 260 (1980).

Similarly, we are not persuaded that we should reach a contrary conclusion because the deficiency notice herein reveals on its face that respondent's calculations were not

---

[4]See also *Hart v. Commissioner*, T.C. Memo. 1982–553; *Stevenson v. Commissioner*, T.C. Memo. 1982–16.

based upon, and did not bear any relationship to, petitioners' return. The concept that the requirement of section 6211(a) is one of *methodology* and has no jurisdictional significance is equally applicable whether or not respondent's failure to utilize a taxpayer's return is patent or latent.

In sum, we hold that the deficiency notice herein was valid and that, with the filing of a timely petition, we have jurisdiction to proceed. Cf. *Frieling v. Commissioner*, 81 T.C. 42 (1983); *Mulvania v. Commissioner*, 81 T.C. 65 (1983).[5] In so holding, we emphasize that we view respondent's actions in constructing and issuing the deficiency notice herein as far from satisfactory. Respondent is reminded that, while a deficiency notice may be held to provide a sufficient foundation for jurisdictional purposes, it may nevertheless be held to be arbitrary and capricious, with the result that not only is its presumption of correctness destroyed,[6] but the burden of going forward or the burden of proof is shifted to respondent. *Helvering v. Taylor*, 293 U.S. 507 (1935); *Jackson v. Commissioner*, 73 T.C. 394, 401 (1979). In the instant case, the combination of respondent's concession as to the substantive issue set forth in the deficiency notice and the fact that his amendment to answer raises a new issue makes it unnecessary for us to decide whether the deficiency notice is so inadequate as to produce this consequence.[7]

Petitioners' assertion that the notice of deficiency is invalid because it advises them of an assessment concurrently with the notice is without merit. Petitioners concede that no assessment has been made. Webster's Third New International Dictionary (1965 ed.), defines "assess" as meaning "to determine the rate or amount of" a tax. The use of the word "assessment" in the instant deficiency notice meant no more

---

[5] With respect to petitioners' argument that they might well have thrown the notice of deficiency away and, as a consequence, been assessed the tax claimed to be due, we observe that, in such event, they would have been able, in a collection action, to make the same arguments as made herein and been subject to the same expense. Our ruling provides them with a forum to litigate the substantive issues without prepayment—a procedure which would not have been available to them if their resistance to the assessment was unsuccessful.

[6] See *Llorente v. Commissioner*, 74 T.C. 260, 272 (1980) (Tannenwald, J., concurring).

[7] See also our discussion, pp. 862–864 *infra*, in respect of respondent's motion for leave to file an amendment to his answer.

than that. Such use may have been technically incorrect, but it clearly does not rise to the level of depriving the deficiency notice of its validity. Cf. *Commissioner v. Forest Glen Creamery Co., supra* at 971. *Bromberg v. Ingling*, 300 F.2d 859 (9th Cir. 1962), cited by petitioners, is clearly distinguishable. That case, in addition to dealing with a special situation relating to Guam, involved an injunction where the taxpayer had been assessed and had not been given an opportunity for prepayment review.

We turn now to respondent's motion for leave to file an amendment to his answer and petitioners' motion for summary judgment. Initially, we observe that each of these motions was served by the moving party on the other party, but the Court has neither served such other party with a notice for response nor set either motion for hearing. Usually, the Court would take such action. However, it is not required to do so where, as is the case herein, each nonmoving party has been apprised of the motion (see Rule 50(b)(3), Tax Court Rules of Practice and Procedure) and, under the circumstances, we are satisfied that no purpose would be served by so doing. We are satisfied that, on the basis of the existing record herein and our own research, we can proceed to dispose of both motions.

The fact that, if the deficiency notice herein had not been issued, the issuance of a notice of deficiency covering the disallowed deductions in respect of the video tape production for 1978 would presumably have been barred by the statute of limitations[8] does not require us to deny respondent's motion. Here, a timely deficiency notice, which we have held to be valid, was issued and that notice tolled the statute of limitations. See sec. 6213(a); *Frieling v. Commissioner, supra*. Compare *Deakman-Wells Co. v. Commissioner*, 213 F.2d 894, 897–899 (3d Cir. 1954), revg. 20 T.C. 610 (1953). Under these circumstances, even if respondent had asked for an increased deficiency (respondent has actually reduced his asserted deficiency herein, see p. 859 *supra* ) as well as asserting a totally new issue, allowance of an amendment to his answer

---

[8]Petitioners filed their 1978 return on or about Sept. 3, 1979, and, as far as this record shows, were first put on notice as to the disallowance of these deductions more than 3 years later, namely, on Nov. 29, 1982. The issuance of a deficiency notice would have been barred at that time, since there is no indication that the statute of limitations was extended. Sec. 6501(a) and (c).

could be granted. *Teitelbaum v. Commissioner*, 346 F.2d 266 (7th Cir. 1965), affg. a Memorandum Opinion of this Court.[9] In considering what action we should take on respondent's motion, we think it significant that the substantive issue, which respondent seeks to place before the Court, is already the subject of a pending case with respect to petitioners' taxable year 1977. See pp. 858–859 *supra*. Thus, petitioners will, in any event, be put to the expense of defending the substantive issue of the disallowance of the deductions in respect of the video tape production. Moreover, we note that the case has not yet been set for trial. Thus, no element of surprise is involved.

In view of the foregoing, we can see no prejudice to petitioners in granting respondent's motion. We observe, however, that we would not necessarily reach the same conclusion if we did not have the ameliorating circumstance of the pendency of the case involving the taxable year 1977. We do not think that our holding that a deficiency notice is valid for jurisdictional purposes requires us to conclude that respondent may amend his answer as a matter of right and irrespective of the circumstances at any time "at or before the hearing or a rehearing" of a case (see sec. 6214(a)), if, in the exercise of our discretion, we should determine that respondent should not be permitted to do so. Cf. *Jasionowski v. Commissioner*, 66 T.C. 312, 317 (1976). See also *Commissioner v. Long's Estate*, 304 F.2d 136, 144 (9th Cir. 1962); *Koufman v. Commissioner*, 69 T.C. 473, 476 (1977); *Estate of Horvath v. Commissioner*, 59 T.C. 551, 554–556 (1973).[10] Respondent will, of course, have the burden of proof on the issues raised by the amendment to his answer. Rule 142(a).

Our granting of respondent's motion for leave to file the amendment to his answer obviously results in the existence of issues of fact which preclude the granting of petitioners' motion for summary judgment.

---

[9]See also *Scharf v. Commissioner*, T.C. Memo. 1973–272, and cases cited therein.
[10]See also *Spain v. Commissioner*, T.C. Memo. 1978–270.

*Petitioners' motion to dismiss for lack of jurisdiction will be denied.*

*Respondent's motion for leave to file amendment to answer will be granted.*

*Petitioners' motion for summary judgment will be denied.*

Reviewed by the Court.

CHABOT, *J.*, concurring: Tax returns are not supposed to be merely negotiation documents. Similarly, notices of deficiency are not supposed to be merely negotiation documents. Each such document has legal consequences. Each such document ought to be prepared with care, as befits documents the mere mailing of which has significant legal consequences.

The notice of deficiency in the instant case clearly was not prepared with care. The notice ignores petitioners' tax return, which had been filed about 33 months earlier. The notice asserts petitioners' involvement in a tax shelter in which petitioners were not involved and disallows a deduction which petitioners did not claim. Finally, the notice applies a marginal tax rate of 70 percent to determine the tax deficiency.

The notice acknowledges the likelihood of errors, at least as to those flowing from ignoring petitioners' tax return, but seeks to excuse respondent's precipitous action because this action was taken "In order to protect the government's interest and since your original income tax return is unavailable at this time".

Respondent should not seek to excuse his failure to do his job properly by claiming that his irresponsible actions are taken "to protect the government's interest". The Congress has defined the Government's interest. Part of that definition of the Government's interest (as distinct from the tax collector's interest) is the statute of limitations. The Congress has determined that respondent ordinarily has 3 years to mail an income tax notice of deficiency. If respondent needs more time to complete the process of auditing and sending a meaningful notice of deficiency, then respondent should ask the Congress for a longer statute of limitations. If respondent needs more auditors, then respondent should ask the Congress for the

funds necessary to hire and train more auditors. If respondent needs more computer capability, then respondent should ask the Congress for the funds and authority necessary to secure the expanded computer capability and to provide appropriate training programs for his computer personnel.

When respondent sent the notice of deficiency in the instant case, he had all the information necessary to show that the statements in the notice of deficiency were incorrect and that these errors were material. Almost 8 months after mailing the notice of deficiency, respondent got around to acknowledging that he already had the information which showed that his notice of deficiency was wrong. Respondent abused his authority both by acting hastily to send the notice of deficiency and by acting leisurely to acknowledge his earlier error. Notwithstanding this abuse, the notice of deficiency meets all the formal requirements that this Court has hitherto specified for such documents. Accordingly, I agree with the majority's analysis as to petitioners' motion to dismiss for lack of jurisdiction, and with their denial of this motion.

Rule 41(a), Tax Court Rules of Practice and Procedure, provides that, in the circumstances of the instant case, respondent was permitted to amend his answer within 30 days after it was served. "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given freely *when justice so requires.*" (Emphasis supplied.)

The issue in dispute in the instant case is already before this Court because of another notice of deficiency and another petition for a different year and so, regardless of how we decide the motions before us in the instant case, this Court will be put to the trouble of deciding the issue and petitioners will be put to the trouble of presenting their view as to this issue. If it were not for this fortuitous event, I would conclude that justice did not require us to grant respondent's motion for leave to file an untimely amendment to his answer. Because of the peculiar facts in the instant case, I join in the majority's conclusion that respondent's motion should be granted.

Respondent should be aware that a long history of abuse of governmental powers has in the past caused courts to overrule prior analysis as to the effects of such abuse. Perhaps the most striking illustration of the courts' finally becoming "fed up" with such abuse is with regard to the admissibility of illegally

obtained evidence. See, e.g., discussion in *Linkletter v. Walker*, 381 U.S. 618, 636–637 (1965). Respondent's action in the instant case, taken "to protect the government's interest", has very nearly injured the Government's interest. If respondent continues to take such precipitous action in the future, it is likely that the Government's interest will be severely injured.

SHIELDS, *J.*, agrees with this concurring opinion.

SWIFT, *J.*, concurring: I concur in the majority opinion but disagree with the suggestion therein, in Judge Chabot's concurring opinion, and in Judge Whitaker's dissent that but for the presence of a similar issue before this Court for taxable year 1977, the Commissioner's motion to amend under Rule 41(a), Tax Court Rules of Practice and Procedure, would and should be denied.

Where the Commissioner has been severely delinquent in moving to amend his answer to raise a new issue and where that delinquency results in significant prejudice to the taxpayer, this Court should not be hesitant to deny a motion to amend. However, the facts of this case do not begin to establish any such delinquency or prejudice. On November 29, 1982, just 4½ months after the petition was filed, the Commissioner notified taxpayers of the issue concerning the video tape tax shelter, and on April 5, 1983, the Commissioner's motion to amend was filed. No discovery has occurred. No significant pretrial proceedings have occurred due to the dispute over the jurisdictional issue.

Factors which might result in a denial of a motion to amend an answer (e.g., stale evidence, unavailable witnesses or documents, passage of undue time, remoteness in time of taxable years involved in the underlying dispute, or completion of discovery and/or trial) are not present in this case. The majority opinion correctly concludes that the Commissioner's motion to amend its answer should be granted.

DAWSON and SIMPSON, *JJ.*, agree with this concurring opinion.

WHITAKER, *J.*, concurring in part and dissenting in part: I agree with the majority that the deficiency notice is valid and

hence that we acquired jurisdiction upon the filing of the petition in this case. Thus, petitioners' motion to dismiss for lack of jurisdiction must be dismissed. I strongly disagree, however, with the granting of respondent's motion for leave to amend the answer and the consequent denial of petitioners' motion for summary judgment.

The majority states: "In view of the foregoing, we can see no prejudice to petitioners in granting respondent's motion." In finding no prejudice, the majority places emphasis on the pendency before this Court of the prior year which includes the same, or an issue substantially similar, to the one which respondent seeks now to raise in the amended answer. The opinion totally ignores the sequence of events. The statutory notice was mailed on June 14, 1982, and the petition was filed on July 7, 1982. Respondent, however, chose to wait until November 29, 1982, to advise petitioners informally of his error. His motion for leave to amend his answer was not filed until April 5, 1983. In the interim, petitioners have incurred substantial expense. Perhaps if respondent, in a timely filed answer, had conceded that the statutory notice was erroneous and had raised the issue which respondent now seeks to raise, the majority's action would at least be defensible. But I cannot justify now excusing respondent's gross negligence in the issuance of the statutory notice, compounded by the long delay in placing before petitioners and this Court the proper issue.

Rule 41(a) directs that leave to amend "shall be given freely when justice so requires." I would hold that justice requires that we decline to grant leave to amend. Respondent's actions warrant more than a mere slap on the wrist. I would deny the motion for leave to amend the answer and grant petitioners' motion for summary judgment.

WILBUR, KÖRNER, and HAMBLEN, *JJ.*, agree with this concurring and dissenting opinion.

FAY, *J.*, dissenting: I agree with Judge Chabot's concurring opinion insofar as he charges that respondent acted irresponsibly in preparing the notice of deficiency in this case. However, I disagree with his conclusion that the notice of deficiency nevertheless satisfies the formal requirements for such docu-

ments. Accordingly, I would grant petitioners' motion to dismiss for lack of jurisdiction.

GOFFE and COHEN, *JJ.*, agree with this dissent.

STERRETT, *J.*, dissenting: The majority grants no substantive meaning to the statutory word "determination," forbids judicial review of the respondent's interpretation of the term, forces the recipient to court on the merits, and leaves him with the remedy that the trial judge will shift the burden of proof when convinced that an abuse has occurred.

Thus, it is that, under the majority opinion, the following qualifies as a valid statutory notice of deficiency within the meaning of sections 6211 and 6212 of the Code.

Dear Taxpayer:

There is a rumor afoot that you were a participant in the Amalgamated Hairpin Partnership during the year 1980. Due to the press of work we have been unable to investigate the accuracy of the rumor or to determine whether you filed a tax return for that year. However, we are concerned that the statute of limitations may be about to expire with respect to your tax liability for 1980.

Our experience has shown that, as a general matter, taxpayers tend to take, on the average, excessive (unallowable) deductions, arising out of investments in partnerships comparable to Amalgamated that aggregate some $10,000. Our experience has further shown that the average investor in such partnerships has substantial taxable income and consequently has attained the top marginal tax rate.

Accordingly, you are hereby notified that there is a deficiency in tax in the amount of $7,000 due from you for the year 1980 in addition to whatever amount, if any, you may have previously paid.

Sincerely yours,

Commissioner of Internal Revenue

I dissent.

FAY, WILES, and COHEN, *JJ.*, agree with this dissent.

GOFFE, *J.*, dissenting: I would hold that the Commissioner has not "determine[d] a deficiency" within the meaning of section 6212(a). This section requires him to do so as a condition precedent to the mailing of "notice of such deficien-

cy" to a taxpayer. Accordingly, the document mailed to petitioners on June 14, 1982, cannot constitute a notice of deficiency and cannot form the basis for filing a petition to invoke the jurisdiction of this Court. Petitioners' motion to dismiss for lack of jurisdiction should be granted.

The majority's holding that the purported notice of deficiency is valid is based upon cases dealing with the language of notices of deficiency. The instant case, however, concerns those actions which the Commissioner must take prior to mailing notices of deficiency.

The majority, without the citation of any authority, concludes that section 6211(a), which defines a deficiency, "simply outlines the method by which a notice of deficiency should be constructed and does not affect the jurisdiction of this Court." This interpretation is too limited and fails to integrate the extensive usage of the term "deficiency" in the provisions granting jurisdiction to the Tax Court. "[It] is not the *existence* of a deficiency but the Commissioner's *determination* of a deficiency that provides a predicate for Tax Court jurisdiction." *Hannan v. Commissioner*, 52 T.C. 787, 791 (1969).

The definition of a "deficiency" in section 6211(a), and the limited grant of authority to the Secretary in issuing notices of deficiency in section 6212(a), *mandate* the procedure by which the Commissioner may lawfully issue "statutory notices." When, as in the instant case, the Commissioner blatantly and intentionally disregards these limitations upon his statutory authority, we should not confer jurisdiction which, as a matter of law, does not exist.

This is an issue of first impression. The statutory provisions involved here have not previously been construed by the courts. The first step, therefore, should be an examination of the applicable statutory language. *Janowski v. International Brotherhood of Teamsters, Etc.*, 673 F.2d 931, 936 (7th Cir. 1982), cert. denied ___U.S. ___(1983). The Supreme Court recently reviewed this analytical process in *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982), and declared that:

As in all cases involving statutory construction, "our starting point must be the language employed by Congress," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337 (1979), and we assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States*, 369 U.S. 1, 9 (1962). Thus, "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."

*Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).

Applying this Supreme Court mandate requiring, at least initially, a literal examination of the statutory language in issue, it is apparent that Congress has enacted a comprehensive definition of what constitutes a "deficiency." In section 6211(a), Congress declared that this term of art is:

the amount by which the tax imposed by subtitle A or B, or chapter 41, 42, 43, or 44 exceeds the excess of—
    (1) the sum of
        (A) *the amount shown as the tax by the taxpayer upon his return,* if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
        (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—
    (2) the amount of rebates, as defined in subsection (b)(2), made.
    [Emphasis added.]

Thus, it is apparent that Congress defined a deficiency associated with a taxpayer's taxable year as a function of the amount of tax which was self-assessed by the taxpayer on his return, i.e., the excess of the correct amount of tax owed over the tax declared to be due, adjusted for prior assessments and rebates.

When construing statutory definitions, the Supreme Court has recently declared that "As a rule, '[a] definition which declares what a term "means" * * * excludes any meaning that is not stated.' 2A C. Sands, Statutes and Statutory Construction, sec. 47.07 (4th ed. Supp. 1978)." *Colautti v. Franklin,* 439 U.S. 379, 392–393 n. 10 (1979). Further, the Court of Appeals for the District of Columbia Circuit recently held in *Consumers Union of U.S., Inc. v. Heimann,* 589 F.2d 531, 533 (D.C. Cir. 1978), that:

we are also mindful that a reviewing court must accord first priority in statutory interpretation to the plain meaning of the provision in question. *Caminetti v. United States,* 242 U.S. 470, 485, 37 U.S. 192, [sic] 61 L.Ed. 442 (1917); *accord, United States v. American Trucking Associations,*310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). Thus, if the Congress has intentionally and unambiguously crafted a particularly broad, all-inclusive definition, it is not our function * * * to subvert that effort.

In section 6212(a), Congress granted the Secretary of the Treasury limited authority to issue notices of deficiency by providing that:

*If the Secretary determines that there is a deficiency* in respect of any tax imposed by subtitle A or B or chapter 41, 42, 43, 44, or 45, *he is authorized to send notice of such deficiency* to the taxpayer by certified mail or registered mail. [Emphasis added.]

Even a cursory review of this provision discloses that Congress did not grant the Secretary unlimited and unfettered authority to issue notices of deficiency. Rather, Congress specifically conditioned the Secretary's authority to issue "statutory notices" upon a preliminary event, i.e., "if the Secretary determines that there is a deficiency."

From a literal reading of these definitive congressional enactments, it necessarily follows that the Secretary is authorized to issue notices of deficiency *only* when he has determined that the amount of tax self-assessed by the taxpayer on his return (assuming a return is filed), adjusted for prior rebates and assessments, is less than the correct amount of tax due. Therefore, if the Secretary fails to make the required determination that the amount of tax self-assessed by a taxpayer on his Federal income tax return for a taxable year (adjusted for prior rebates and assessments) is less than the correct amount of tax owed, the Secretary lacks the lawful authority to issue a notice of deficiency to that taxpayer; hence, any resulting notice of a deficiency is a nullity. *United States v. B. & O. R. Co.*, 293 U.S. 454, 462 (1935).

Another basis for concluding from a literal examination of section 6212(a) that Congress intended to condition the Secretary's authority to issue notices of deficiency upon an examination of the taxpayer's tax return (assuming one is filed) concerns Congress' utilization of the term "determines." When used as a verb, as in the instant case, the term denotes a decision after analysis. Given section 6211(a)'s definition of a "deficiency" and the context of the terms "determines" and "deficiency" in section 6212(a), it necessarily follows that an examination of the taxpayer's return is essential for the Secretary to make the requisite determination. To conclude otherwise would pervert the statutory construction edict set forth in *United States v. Menasche*, 348 U.S. 528, 538-539 (1955), wherein the Supreme Court declared:

The Government's contention that section 405(a) does not apply to any phase in the processing of naturalization petitions would defeat and destroy the plain meaning of that section. "The cardinal principle of statutory

construction is to save and not to destroy." *Labor Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30. It is our duty "to give effect, if possible, to every clause and word of a statute," *Montclair v. Ramsdell*, 107 U.S. 147, 152, rather than to emasculate an entire section, as the Government's interpretation requires.

It is well established that statutes pertaining to the same subject matter, i.e., in pari materia, are to be construed together. *Estate of Sanford v. Commissioner*, 308 U.S. 39, 42 (1939); 2A C. Sands, *supra* at sec. 51.02. Sections 6212(a) and 6213(a), which pertain to the computation of deficiencies, were enacted at the same time.[1] The Supreme Court declared in *Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972), that the application of the rule of pari materia "certainly makes the most sense when the statutes were enacted by the same legislative body at the same time." Applying this statutory construction principle to sections 6212(a) and 6213(a), which deal with the same subject matter, the majority's holding that the Secretary can "determine" a deficiency without examining the taxpayer's return ridiculously implies that this Court can also "redetermine" the amount of the deficiency without reviewing the return.

Finally, it should be noted that the courts have consistently utilized several basic construction techniques in construing revenue legislation. The first analytical tool provides that words are to be given their common and ordinary meaning when interpreting tax provisions. *Crane v. Commissioner*, 331 U.S. 1 (1947); *Helvering v. San Joaquin Fruit & Investment Co.*, 297 U.S. 496 (1936); *Old Colony R. Co. v. Commissioner*, 284 U.S. 552 (1932); 3 N. Singer, Statutes and Statutory Construction, sec. 66.03 (4th ed. Supp. 1983). The remaining consideration concerns the effect to be given to detailed congressional revenue legislation which was neatly summarized in *Lykes Bros. Steamship Co. v. United States*, 206 Ct. Cl. 344, 513 F.2d 1342, 1349 (1975), wherein they stated:

Congress often expresses its will in the customary meaning of the language it uses, and when "The requirements of the [statute] are detailed and specific, * * * [they] must be applied with precision." *Commissioner v.*

---

[1] The modern predecessor provisions of these sections were first enacted in the Act of Feb. 10, 1939, Pub. L. 76-1, 53 Stat. 1; and were re-enacted in the Act of Aug. 16, 1954, Pub. L. 83-591, 68A Stat. 1.

*Gordon*, 391 U.S. 83, 91–92, 88 S.Ct. 1517, 1523, 20 L.Ed.2d 448 (1968); *see, e. g., Braunstein v. Commissioner*, 374 U.S. 65, 69–73, 83 S.Ct. 1663, 10 L.Ed.2d 757 (1963); *Hanover Bank v. Commissioner*, 369 U.S. 672, 687, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962); *First Nat'l Bank of Chicago v. United States*, 38 F.2d 925, 931, 69 Ct.Cl. 312, 325 (1930), aff'd, 283 U.S. 142, 51 S.Ct. 378, 75 L.Ed 913 (1931).

From the preceding literal analysis of the pertinent sections, it is apparent that Congress intended to limit the Secretary's authority to issue statutory notices and specifically conditioned any exercise of such power upon an examination of the taxpayer's return (assuming one is filed) and a finding that the amount of self-assessed tax thereon, adjusted for prior assessments and rebates, is less than the correct amount of tax due. The plain meaning of the language employed by Congress is ordinarily regarded as conclusive, absent a clearly expressed legislative intent to the contrary. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982); *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). Yet the majority's holding clearly departs from the statutes' plain meaning without any citation of contrary legislative intent.

The legislative history accompanying the enactment of sections 6211(a) and 6212(a) and their predecessor provisions in the Internal Revenue Code of 1939 and the Revenue Act of 1924 do not specifically address the immediate issues. Correlative legislative history, however, supports a literal construction of these sections. The Senate Finance Committee Report to the Individual Income Tax Act of 1944 (S. Rept. 885, 78th Cong., 2d Sess. (1944), 1944 C.B. 858, 887) concerning a technical amendment to the definition of a "deficiency" noted that "In general, the starting point in the determination of a deficiency is the amount shown as the tax by the taxpayer upon his return." In addition, in amending section 6659(b), the following language suggests that Congress assumed that the Commissioner would examine the tax return before mailing a statutory notice:

These court decisions have confronted the Internal Revenue Service with very serious administrative problems. For example, before a 90-day letter could be mailed with respect to the addition to tax for late filing, the Internal Revenue Service would have to examine the return to insure that there was no deficiency in tax which might be barred from later assessment because of the restrictions on the issuance of additional 90-day letters under

section 6212(c) of the 1954 code. Such a procedure would force the Service to audit many thousands of returns which otherwise might not be audited. If the Service were forced to follow the 90-day letter procedure for additions to tax for late filing of returns and for underpayment of estimated tax, the number of 90-day letters issued each year would be increased to about 1 million; whereas the Service now issues only about 78,000 90-day letters each year for all causes. [H. Rept. 1217, 86th Cong., 2d Sess. (1960), 1960–1 C.B. 840, 841–842.]

In our recent case of *Metzger Trust v. Commissioner*, 76 T.C. 42, 59–60 (1981), affd. 693 F.2d 459 (5th Cir. 1982), a Court-reviewed opinion, we stated that "It is not the function of a Court to rewrite or amend a statute in the guise of construing it. It is the Court's duty to construe and apply the statute as it is written." Further, we continued and stated on page 71 that:

Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting a statute. Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end. We do not sit as a committee of review, nor are we vested with the power of veto. [*Tennessee Valley Authority v. Hill*, 437 U.S. 153, 194–195 (1978).]
* * * "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted. * * * Perhaps the wisdom we possess today would enable us to do a better job * * * than Congress did [years ago] * * * but even if that be true, we have no authority to substitute our views for those expressed by Congress in a duly enacted statute." *Mobil Oil Corp. v. Higginbotham, Administratrix*, 436 U.S. 618, 625–626 (1978). Where Congress has specifically excluded a term or phrase, it is not for the courts to read that term or phrase into the statute. *United States v. Moreno*, 561 F.2d 1321, 1322 (9th Cir. 1977). Such a rewriting of a statute, plain on its face, is an example of lawmaking as distinguished from statutory interpretation that is beyond the power of the courts. *Gaddis v. Calgon Corp.*, 449 F.2d 1318, 1319 (5th Cir. 1971). Accord, *Allen v. David*, 334 F.2d 592, 601 (5th Cir. 1964), cert. denied 379 U.S. 967 (1965).

Despite this Court's prior denunciation against judicial legislation, this is precisely what the majority here does. Ignoring both the plain meaning of the statutory provisions and the absence of conflicting legislative history, the majority has amended sections 6211(a) and 6212(a) to empower the Secretary with unbridled authority to issue notices of deficiency without even determining whether a taxpayer has, in fact, filed a return or self-assessed the correct amount of tax due. This is amply demonstrated by the majority's holding that a

valid notice of deficiency was issued to petitioners despite the following Orwellian[2] language in the document:

In order to protect the government's interest and since your original income tax return is unavailable at this time, the income tax is being assessed at the maximum rate of 70%.

The tax assessment will be corrected when we receive the original return or when you send a copy of the return to us.

These excerpts from the purported notice of deficiency conclusively demonstrate that it was not based upon an examination of petitioners' tax return. Further, it is equally apparent that when this document was mailed to petitioners, the Secretary had not even determined whether petitioners had, in fact, filed a tax return. Therefore, it is impossible for the Secretary to have made a "determination" that a "deficiency" as defined in section 6211(a) existed, i.e., "the amount shown as the tax by the taxpayer upon his return," adjusted for prior assessments and rebates, was less than the correct amount of taxes due. Given that Congress specifically conditioned the Secretary's authority to issue notices of deficiency upon an examination of the taxpayer's return (assuming one is filed), I would hold that the purported notice of deficiency is a nullity. *United States v. B. & O. R. Co.*, 293 U.S. 454, 462 (1935). From these conclusions, it necessarily follows that we have no jurisdiction to continue these proceedings and accordingly, must grant petitioners' motion to dismiss. Rule 13(a), Tax Court Rules of Practice and Procedure.[3]

The majority concludes that the determination of a deficiency is not germane to this Court's jurisdiction. Sections 6211 through 6216 comprise Subchapter B—Deficiency Procedures in the Case of Income, Estate, Gift and Certain Excise Taxes,

---

[2]G. Orwell, 1984 (1949).

[3]RULE 13. JURISDICTION

(a) Notice of Deficiency or of Transferee or Fiduciary Liability Required: Except in actions for declaratory judgment or for disclosure (see Titles XXI and XXII), the jurisdiction of the Court depends (1) in a case commenced in the Court by a taxpayer, upon the issuance by the Commissioner of a notice of deficiency in income, gift, or estate tax or, in the taxes under Chapter 41, 42, 43, or 44 of the Code (relating to the excise taxes on certain organizations and persons dealing with them), or in the tax under Chapter 45 of the Code (relating to the windfall profit tax), or in any other taxes which are the subject of the issuance of a notice of deficiency by the Commissioner; and (2) in a case commenced in the Court by a transferee or fiduciary, upon the issuance by the Commissioner of a notice of liability to the transferee or fiduciary. See Code Sections 6212, 6213 and 6901.

all of which inextricably relate to the jurisdiction and proceedings in the Tax Court. The jurisdiction of this Court is set forth in section 6214. Under section 6214(a), jurisdiction is conferred upon the Tax Court to "redetermine" the correct amount of a "deficiency," *notice of which* has been mailed to the taxpayer. Use of the word "redetermine" necessarily implies that the deficiency has been "determined." Section 6212(a) authorizes the Secretary (who has delegated such authority to the Commissioner) to send a notice of deficiency to a taxpayer with respect to a deficiency that the Secretary has "determined." Section 6213 prescribes the time for filing a petition with the Tax Court based upon the date of mailing the notice of deficiency. If the petition is not timely mailed, the Tax Court has no jurisdiction. The determination of a deficiency in a notice of deficiency is a prerequisite to invoking the jurisdiction of the Tax Court. It is inconceivable to me how the majority can hold that the steps involved in preparing a notice of deficiency cannot affect the jurisdiction of this Court.

The majority also bases its holding upon our admonition that we will not ordinarily look behind a deficiency notice, citing *Riland v. Commissioner*, 79 T.C. 185, 201 (1982), and *Greenberg's Express v. Commissioner*, 62 T.C. 324, 327 (1974). First, there is no need to go behind the statutory notice in the instant case because, on its face, it states that the return was not examined. Second, going behind the statutory notice is a policy consideration and we have stated that "our jurisdiction is purely statutory and not dependent on policy considerations." *Estate of Young v. Commissioner*, 81 T.C. 879, 888 (1983).

The concurring opinions examine the peculiar facts of this case, yet this Court-reviewed opinion stands for the broad proposition that the Commissioner is not required to examine the tax return before he mails a notice of deficiency to a taxpayer. If the harm to petitioners is so inconsequential, then the opinion should have been issued as a memorandum opinion, one having no effect as precedent. But that is not the case. The opinion of the majority has broad and far-reaching implications.

None of the concurring opinions point to other critical lurking implications arising from the holding of the majority. First, by the following scenario, the Commissioner successfully

circumvented the statute of limitations. Petitioners' income tax return for 1978, the year in issue, was filed on September 3, 1979. The period of limitations on assessment of additional tax for the year 1978 expired on September 2, 1982. Respondent's motion to amend his answer was filed with the Court on April 5, 1983, after the period of limitations expired. The amendment to the answer is actually the first time that the Commissioner determined a deficiency in petitioners' income tax as "deficiency" is defined in section 6211(a). Therefore, this constitutes the first valid "notice of deficiency." In the amendment to the answer, the Commissioner disallowed several deductions which petitioners claimed and, at *that late date*, determined a deficiency of $10,374, as distinguished from the arbitrary "deficiency" of $96,600 purported to have previously been "determined."

The record also reveals that the Commissioner did not contact petitioners prior to mailing the purported notice of deficiency, yet over 2 months remained within which to timely mail a valid statutory notice. If the Commissioner had contacted petitioners, he could have possibly obtained petitioners' retained copy of their return, which would reveal the absence of any connection with the Nevada Mining Project Partnership and petitioners' marginal tax rate. Further, petitioners might have been willing to consent to extend the period of limitations on assessment to permit an examination of their return for 1978. Instead, the Commissioner acted precipitously, thereby forcing petitioners to incur substantial legal expenses in order to avoid an assessment of $96,600 against them.

Second, none of the opinions observe that this notice of deficiency apparently is clothed with the usual presumption of correctness. How can a notice of deficiency be presumptively correct if it is not based upon an examination of the tax return? *Welch v. Helvering*, 290 U.S. 111, 115 (1933).

The record is devoid of any explanation concerning respondent's counsel's denial, in his answer, of petitioners' allegations of the absence of any relationship with the Nevada Mining Project Partnership. Pursuant to Rule 33(b), Tax Court Rules of Practice and Procedure, the signature of counsel for respondent "constitutes a certificate by him that he has read the pleading; that, to the best of his knowledge, information, or

belief, there is good ground to support it." Given respondent's subsequent admission of this allegation, it is clear that he should have expressed a lack of knowledge in his answer and later, when he knew the allegation to be true, moved to amend to admit this allegation.

The action of the Commissioner, approved by the majority, has far-reaching effect on all taxpayers which, in my view, is contrary to law and contrary to our self-assessment system.

STERRETT and WILES, *JJ.*, agree with this dissent.