T.C. Memo. 1997-31

UNITED STATES TAX COURT

NORWEST CORPORATION AND SUBSIDIARIES,
SUCCESSOR IN INTEREST TO DAVENPORT BANK
AND TRUST COMPANY AND SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25613-95.                    Filed January 16, 1997.

<u>Scott G. Husaby</u>, for petitioner.

<u>Jack Forsberg</u>, for respondent.


MEMORANDUM OPINION

COUVILLION, <u>Special Trial Judge</u>:  This case was assigned
pursuant to section 7443A(b)(4)[1] and Rules 180, 181, and 183 for
purposes of hearing two motions filed by petitioner:  (1) A
motion to dismiss for lack of jurisdiction with respect to a

_____

[1]    Unless otherwise indicated, section references are to the
Internal revenue Code in effect for the year at issue.  All Rule
references are to the Tax Court Rules of Practice and Procedure.

portion of an adjustment in the notice of deficiency, and (2) in the alternative, a motion to shift the burden of proof to respondent on this adjustment if the Court denies the motion to dismiss. Respondent filed a notice of objection to both motions. Prior to the hearing on these motions, the Court ordered petitioner to file a supplemental motion to dismiss for lack of jurisdiction to clarify the factual premise on which the motion to dismiss for lack of jurisdiction was based. Petitioner filed the supplemental motion prior to the hearing.

In a notice of deficiency, respondent determined a deficiency of $132,088 in Federal income tax for petitioner's 1991 calendar year. This deficiency is based upon respondent's disallowance of $658,000 legal and professional fees that, according to the deficiency notice, were claimed as ordinary and necessary business expenses on petitioner's 1991 Federal income tax return. The disallowed expenses consisted of the following expenses listed in the notice of deficiency:

| | | |
|---|---|---|
| Legal advice | $473,453 | |
| Legal advice | 565 | |
| Accounting fees--comfort letter | 17,350 | |
| Accounting fees--opinion | 15,250 | $506,618 |
| Unidentified costs | | 151,382 |
| Total disallowed expenses[2] | | $658,000 |

---

[2] Respondent also adjusted the environmental tax deduction and the credit for prior year minimum tax. These adjustments are not the subject of petitioner's motions and, therefore, are not before the Court in this proceeding.

Petitioner is a corporation and is the parent company of a group of corporations that files consolidated corporate income tax returns.  At the time the petition was filed, petitioner's principal place of business was Minneapolis, Minnesota.  The issue presented by petitioner's motions arises over the legal and accounting fees described above that were incurred during 1991 in connection with the acquisition of the Davenport Bank and Trust Co. and its merger into Bettendorf Bank, the latter of which is a subsidiary of Norwest Corp.[3]  The merger of these two banks was completed on January 19, 1992.

In petitioner's consolidated income tax return for 1991, petitioner claimed, as an ordinary and necessary business deduction, expenses incurred during 1991 regarding the expansion of its financial services business (banking) within the geographic area known as the "Quad Cities" of Davenport and Bettendorf, Iowa, and Moline and Rock Island, Illinois, which expansion resulted in the acquisition of the Bettendorf Bank and the merger of that bank into petitioner's consolidated group. Petitioner included with its Federal income tax return for 1991 a

---

[3]     Hereafter, references to petitioner include Norwest Corp. and all its subsidiaries that are part of its consolidated group that includes Davenport Bank and Trust Co. and Bettendorf Bank.

statement described as a "protective disclosure statement" to satisfy section 6662(d)(2)(B),[4] which stated:

> The taxpayer has deducted certain legal and professional fees as ordinary and necessary business expenses under section 162 of the Internal Revenue Code.  The amount of the expenses deducted was $658,000.  In INDOPCO, Inc. v. Commissioner, (112 S.Ct. 1039 (1992), aff'g National Starch & Chem. Corp. v. Commissioner, 918 F.2d 426 (3d Cir. 1990)), the Supreme Court held that a corporation must capitalize expenses resulting in future long-term benefits.  The taxpayer believes that the facts and circumstances with respect to the deducted amounts are distinguishable from those in INDOPCO.

In the notice of deficiency, respondent disallowed the $658,000 on the ground that these expenses should be capitalized.

The question as to whether the $658,000 should be capitalized or allowed as an ordinary and necessary expense deduction is not directly at issue in these motions.  Rather, in its motions, petitioner contends respondent made no "determination" of a deficiency with respect to $151,382 of the $658,000 expenses, and, therefore, this Court has no jurisdiction with respect to any underpayment attributable to the $151,382. Alternatively, if the Court has jurisdiction over this portion of

---

[4]     Sec. 6662(a) imposes a penalty for any portion of an underpayment in tax that is attributable to one or more of five situations described in sec. 6662(b).  Under sec. 6662(d)(2)(B), any underpayment subject to the penalty shall be reduced if it is attributable to any item as to which the taxpayer had substantial authority for the treatment of such item on the return, or as to which "the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return."

the total adjustment, petitioner contends in its second motion that the burden of proof with respect to the $151,382 should shift to respondent.

A hearing was held on both motions. At the hearing, neither party presented any witnesses, and no documentary information was submitted into evidence. The hearing consisted solely of the arguments of counsel.

It is undisputed that, sometime after petitioner's 1991 return was filed, an engineer agent with the Internal Revenue Service (IRS) issued to petitioner an information document request with respect to the $658,000 expenses referred to in the disclosure statement, requesting an itemization of the expenses comprising the $658,000 and documentation to support the claimed expenses. Petitioner replied with the following itemization:

| | |
|---|---|
| Lane & Waterman--legal advice | $473,453 |
| Lane & Waterman--legal advice | 565 |
| KPMG--comfort letter | 17,350 |
| KPMG--tax opinion | 15,250 |
| Unidentified | 151,382 |
| Total | $658,000 |

No documentation was provided the IRS agent to support the $151,382 unidentified costs.

Petitioner contends that the $151,382, described in the above itemization as "Unidentified" costs, was included by error in the $658,000 of expenses referred to on the disclosure statement and that only $506,618 was incurred and claimed as a

deduction on the income tax return.  Since respondent has disallowed, in the notice of deficiency, expenses of $658,000, petitioner contends that respondent, in effect, has disallowed $151,382 of expenses that are not related to petitioner's merger activity.  Petitioner further argues that, given that petitioner informed the IRS agent that petitioner did not in fact incur merger-related expenses of $151,382, and respondent, nonetheless, disallowed such expenses in the notice of deficiency, respondent should be required to advise petitioner what items of expenses on petitioner's tax return comprise the $151,382 disallowed expenses.  Because respondent, in the audit process, failed to provide such information, petitioner contends that respondent failed to make a "determination" of a deficiency attributable to the $151,382, and, therefore, this Court lacks jurisdiction as to this $151,382 portion of the $658,000 adjustment.  To quote from petitioner's memorandum of authorities, "Petitioner repeatedly requested more specificity as to which expense(s) was being reviewed to permit identification and retrieval of all source documentation and other potential support.  Respondent refused to be more specific as to which expense(s) was being reviewed."  When the examining agent later proposed to disallow the $658,000, petitioner responded in writing that the $151,382 (of the $658,000) "was a plug and not identifiable as legal or

professional fees related to the merger."[5]  Since respondent refuses to identify those expenses claimed on petitioner's return that comprise $151,382, petitioner contends that respondent has not "determined" a deficiency attributable to $151,382, citing Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), revg. 81 T.C. 855 (1983).

This Court's jurisdiction to redetermine a deficiency is based upon the issuance of a valid notice of deficiency and a timely filed petition.  Rule 13(a), (c); see Monge v. Commissioner, 93 T.C. 22, 27 (1989); Normac, Inc. v. Commissioner, 90 T.C. 142, 147 (1988).  At a minimum the notice of deficiency must identify the taxpayer, indicate that the Commissioner has made a determination of deficiency, and specify the taxable year and amount of the deficiency.  See Estate of Yaeger v. Commissioner, 889 F.2d 29, 35 (2d Cir. 1989), affg. in part, revg. in part, and remanding T.C. Memo. 1988-264.  The case of Scar v. Commissioner, supra, cited by petitioner, is distinguishable from this case.  In the Scar case, the Commissioner issued a notice of deficiency disallowing deductions

---

[5]  Petitioner has not explained what is meant by its reference to the $151,382 as a "plug".  The Court is unsure whether this means that $151,382 was added as a "catch-all" of other expenses, whether supporting documentation was not available for the $151,382, or whether the $658,000 claimed was intentionally overstated out of an abundance of caution in attempting to satisfy the disclosure requirements for purposes of sec. 6662(a). Respondent's position at the hearing was that the $151,382 was not an error by petitioner.

the taxpayer had never claimed and determined a deficiency at the highest marginal tax rate. In the notice of deficiency, it was stated that the taxpayer's income tax return was not available, and that the deficiency was determined at the maximum rate of 70 percent to protect the Government's interest but would be corrected whenever the original return was received or whenever the taxpayer would send a copy of the return. Under these facts, it was held that the Commissioner had not made a determination of tax because the notice of deficiency, on its face, revealed that it had been issued without any prior inspection of the taxpayer's income tax return. See also Kong v. Commissioner, T.C. Memo. 1990-480.

In the present case, respondent made an examination of petitioner's tax return. Not only did respondent examine the return, there were communications between respondent's examining agent and petitioner with respect to the adjustment at issue. There is no language in the notice of deficiency that indicates that respondent failed to make a determination or failed to examine petitioner's return. Moreover, the fact that the determination in the notice of deficiency may ultimately be held to be erroneous does not invalidate the notice of deficiency. Hannan v. Commissioner, 52 T.C. 787, 791 (1969); Stevens v. Commissioner, 709 F.2d 12, 13 (5th Cir. 1983), affg. T.C. Memo. 1982-352. On this record, petitioner has failed to establish

that respondent did not make a determination with respect to the $151,382 portion of the $658,000 adjustment. The Court, therefore, has jurisdiction over this issue. Petitioner's motion to dismiss for lack of jurisdiction, and its supplemental motion to dismiss for lack of jurisdiction, therefore, will be denied.

In the alternative, petitioner contends that, if the Court has jurisdiction over the $151,382 issue, the burden of proof as to this issue should shift to respondent. That is the basis of petitioner's second motion. Petitioner relies primarily on Portillo v. Commissioner, 932 F.2d 1128 (5th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1990-68. In its memorandum of authorities in support of this motion, petitioner argues:

> In the income tax return for 1991, Petitioner claimed hundreds of thousands of deductions totaling over $141 million. All deductions claimed in the return are identifiable and supportable. Petitioner can prove that all expenditures deducted in the return were proper by producing invoices and other support for such expenditures. However, this process is practically unworkable as it would involve the production of hundreds of thousands of documents and thousands of hours of court time to review. In the end, the Court would find that all expenditures were properly deducted in preparing the return, including the $151,382 of unidentified costs erroneously characterized as merger-related costs in the Disclosure Statement. Respondent must provide sufficient specificity in the Notice of Deficiency as to which deductions are being disallowed in order for the Court, Petitioner, and Respondent to come to some meaningful resolution of the issue. A blanket disallowance of unidentified costs effectively requires the taxpayer to prove up the correctness of the entire return and lends itself to a unreasonably burdensome and unworkable process for taxpayers, Respondent, and the courts.

Respondent must provide a factual foundation for its assessments and has an obligation to substantiate its claim that an expenditure has been improperly deducted. <u>Portillo v. Commissioner</u>, 91-2 USTC ¶50,304 (5th Cir. 1991), indicates that Respondent's failure to properly investigate the claimed deduction results in an arbitrary and capricious notice of deficiency.

The facts of this case are distinguishable from the facts of <u>Portillo v. Commissioner</u>, <u>supra</u>.  In the <u>Portillo</u> case, the IRS, based upon an information return filed by a payer, determined a deficiency against the taxpayer for the difference in the amount reported as income by the taxpayer on his return and the amount reported by the payer on the information return.  That case, therefore, dealt with unreported income rather than deductions as reported and claimed by petitioner in this case.  In the <u>Portillo</u> case, the taxpayer was unable to present any books and records to prove a negative (unreported income); consequently, the Court of Appeals for the Fifth Circuit held that, before the Commissioner's determination could be accorded the presumption of correctness, it was necessary, under the facts presented to the Court, that the Commissioner "must engage in one final foray for truth in order to provide the Court with some indicia that the taxpayer received unreported income." <u>Portillo v. Commissioner</u>, <u>supra</u> at 1133.[6]  Under the facts of the <u>Portillo</u> case, the Court

---

[6]  In <u>Portillo v. Commissioner</u>, 932 F.2d 1128 (5th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1990-68, the taxpayer reported on his income tax return $10,800 income received from
(continued...)

of Appeals held that, although the Commissioner had made a "determination", the presumption of correctness could not be accorded to that determination.

In this case, there is no third party payer involved as to the issue before the Court. Petitioner does not have the burden of proving a negative. Moreover, this case does not involve unreported income but disallowed deductions. Petitioner has books and records by which it can, according to its own assertions, substantiate fully, albeit at some burden, the expenses reported on its return. Petitioner alleges that such proof would show no merger-related expenses in excess of $506,618. The Portillo rationale, therefore, is not applicable to the facts of this case. Respondent's determination in the notice of deficiency is entitled to the presumption of correctness, and the burden to show that this determination is in error lies with petitioner. Petitioner's motion to shift the burden of proof to respondent, therefore, will be denied.

An appropriate order

will be issued.

---

[6](...continued)
the payer. At trial, the taxpayer agreed that the correct amount received was $13,925. Prior to issuance of the notice of deficiency, the IRS examining agent contacted the payer, and the payer's records reflected payments to Mr. Portillo of $13,925. The payer was unable to prove to the examining agent that he had made payments of $35,305 to Mr. Portillo as reported on the information return of the payer to the IRS.